IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM WHITFORD, ROGER ANCLAM,
EMILY BUNTING, MARY LYNNE
DONOHUE, HELEN HARRIS, WAYNE
JENSEN, WENDY SUE JOHNSON, JANET
MITCHELL, ALLISON SEATON, JAMES
SEATON, JEROME WALLACE and DONALD
WINTER,

                                                  OPINION and ORDER

                    Plaintiffs,

                                                 15-cv-421-bbc

      v.

BEVERLY R. GILL, JULIE M. GLANCEY,
ANN S. JACOBS, STEVE KING, DON MILLIS,
and MARK L. THOMSEN,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On November 21, 2016, we issued our opinion and order holding that the

redistricting plan embodied in Act 43 constituted an unconstitutional partisan

gerrymander.  We also solicited the views of the parties as to the appropriate

remedy.  Having received and considered the parties' submissions, we now address the issue of remedy.

## OPINION

The parties agree that the appropriate remedy in this case is to enter an injunction prohibiting the use of Act 43's districting plan in future elections.[1]  The parties dispute, however, who should draft a remedial map, how that map should be drafted, and when it should be implemented.

It is the prerogative of the State to determine the contours of a new map setting forth the electoral districts of the Assembly.  The Supreme Court has made it clear that "[w]hen a federal court declares an existing apportionment scheme unconstitutional, it is … appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan." *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978).[2]  The plaintiffs nevertheless urge that providing the Legislature an opportunity to enact a remedial plan is impracticable here because Wisconsin's elected branches have compiled an

---

[1] *See* R.169 (Defendants' Brief on Remedies) at 5 ("The proper remedy is for the Court to enter an injunction directing the Legislature to draft a new map consistent with its opinion.");  R.170 (Plaintiffs' Brief on Remedies) at 2 ("To begin with, as soon as possible, the Court should enter an injunction barring any further use of the Current Plan.").

[2] *See also* R.170 at 5 (citing same).

"objectionable" record of defending its unconstitutional plan.[3]  In some cases, such an exception to the general rule may be appropriate.[4]  The record in our case, however, contains no evidence of the malice or intransigence that would justify our abrogating such a fundamental principle.  Although the state actors in this case certainly intended the partisan effect that they in fact produced, the record does not permit us to ascribe to them an unwillingness to adhere to an order of this Court or to conform the allocation of seats in the state legislature to constitutional requirements.

The plaintiffs further submit that, if we permit the Wisconsin legislature to redistrict, we should give it "[d]etailed [i]nstructions."[5]  Several considerations militate against such a course.  Consistent with our approach to remedying other constitutional violations, our only interest in the redistricting of the State is to "correct … the condition that offends the Constitution." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971).  "[A] state's freedom of choice to devise substitutes for an apportionment plan found unconstitutional, either as a whole or in part, should not be restricted beyond the clear commands of the Equal Protection Clause." *Wise*, 437 U.S. at 540 (alteration in original) (quoting *Burns v.*

---

[3] *Id.* at 7.
[4] *See Hays v. Louisiana*, 936 F. Supp. 360, 372 (W.D. La. 1996) (refusing to give the Louisiana legislature an opportunity to pass a *third* remedial plan); *Terrazas v. Slagle*, 789 F. Supp. 828, 838–39 (W.D. Tex. 1991) (noting the "unusually lethargic" pace of the state legislature's actions).
[5] R.170 at 10.

*Richardson*, 384 U.S. 73, 85 (1966)).  This very basic principle is grounded not only on the constitutional limitations of federal authority but also on the practical reality that it is the state legislature, not the federal court, that is "the best institution 'to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality.'" *Gorin v. Karpan*, 775 F. Supp. 1430, 1445–46 (D. Wyo. 1991) (quoting *Connor v. Finch*, 431 U.S. 407, 414–15 (1977)).  The record in this case makes abundantly clear that the drafters of the 2010 reapportionment labored intensely over their project. Although, in the end, they produced what we have found to be an unconstitutional result, they wrestled along the way with many legitimate political considerations. Indeed, the record reveals that they produced many alternate maps, some of which may conform to constitutional standards.  In any event, with the benefit of our ruling, state officials should be able to produce a map that, while conforming to the Constitution, will allow them to attain their legitimate political objectives.  In our ruling on the merits, we set forth, at length, the nature of the constitutional violation at issue and the basis for our determination.[6]  Within this framework, it is the prerogative of the State to reapportion as it sees fit. It is neither necessary nor appropriate for us to embroil the Court in the Wisconsin Legislature's deliberations.

---

[6] *See* R.166.

Whether we should set a deadline for the State to enact a remedial plan is a question for which there are only imperfect answers.  The plaintiffs ask us to set a "[s]trict [d]eadline" of April 1, 2017.[7]  They invite our attention to examples of courts giving state legislatures little time within which to pass remedial plans. *See, e.g.*, *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004).  All of those situations occurred during election years when "time [wa]s of the essence." *Johnson v. Mortham*, 926 F. Supp. 1460, 1494 (N.D. Fla. 1996).  For their part, the defendants maintain that, given "the uncertain nature of the law on partisan gerrymandering," we should not require the Legislature to act until after the Supreme Court has ruled on this case.[8]

In a perfect world, the defendants' suggestion would make sense and would permit us to remove ourselves even further from the State's deliberative process.  But there are several countervailing considerations that we must consider.  Members of the Wisconsin Assembly are elected for a term of two years.  Under the prevailing view in this Court, the people of Wisconsin already have endured several elections under an unconstitutional reapportionment scheme.  If they are to be spared another such event, a new map must be drawn in time for the preparatory steps leading up to the election, such as candidate petition circulations in

---

[7] R.170 at 10.
[8] R.169 at 1.

mid-Spring 2018.  At the same time, the defendants' right of appeal must be protected.  We also must take into consideration the drain on legislative resources and energy in enacting a new plan and be cognizant that the Supreme Court has many other important issues on its docket and may well need a significant amount of time to finish its work on this case.

We think that all of these competing considerations can best be accommodated by requiring that the Legislature enact, and the Governor approve, a new redistricting map by November 1, 2017.  This deadline affords the Legislature ample time to enact a plan contingent on the Supreme Court's affirmance of our judgment.  While it allows the defendants and the candidates to make plans for the November 2018 election only on a contingent basis, at least they will be able to prepare for that contingency in the context of a concrete alternate map.

The considerations that we just have discussed make it clear that we do not believe that we ought to stay our judgment pending appeal, as the defendants request.  In assessing the probability of success on the merits, while the majority of the Court remains firm in its belief of the correctness of the decision, "the absence of a well-trodden path"[9] is no doubt of some relevance in considering the appropriateness of a stay. *See, e.g.*, *Ctr. for Int'l Envtl. Law v. Office of the U.S.*

---

[9] R.166 at 31.

7

*Trade Representative*, 240 F. Supp. 2d 21, 22–23 (D.D.C. 2003) (considering, among other factors, that "this case presents an issue of first impression").  We also must take into respectful consideration the dissent of our number on the merits.  Nevertheless, the defendants also must establish irreparable injury absent a stay.  *See, e.g.*, *Larios*, 305 F. Supp. 2d at 1336–37.  Here, we must balance the harm to the defendants against the harm to the plaintiffs.  Much of our earlier discussion is pertinent here. In setting a November 1, 2017 deadline for the enactment of at least a contingent replacement map, we considered the State's burden in enacting even a contingent remedial plan and have concluded that the State's thorough earlier work may significantly assuage the task now before them. Additionally, by choosing to enact a plan *contingent* on the Supreme Court's affirming our judgment, the defendants will retain easily the present map if the Supreme Court does not agree with our disposition.

## ORDER

IT IS ORDERED that the defendants are enjoined from using the districting plan embodied in Act 43 in all future elections.

IT IS FURTHER ORDERED that the defendants have a remedial redistricting plan for the November 2018 election, enacted by the Wisconsin Legislature and signed by the Governor, in place no later than November 1, 2017.

This plan must comply with our November 21, 2016 order but may be contingent upon the Supreme Court's affirmance of our November 21, 2016 order.

      The clerk of the court is directed to enter judgment in favor of the plaintiffs.

      Entered this 27th day of January, 2017.

BY THE COURT:

/s/_____

KENNETH F. RIPPLE

Circuit Judge

/s/_____

BARBARA B. CRABB

District Judge

/s/_____

WILLIAM C. GRIESBACH

District Judge