# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

WILLIAM WHITFORD, et al.,

    Plaintiffs,

v.                                                  No. 15-cv-421-jdp

BEVERLY R. GILL, et al.,

    Defendants;

    and

THE WISCONSIN STATE ASSEMBLY,

    Intervenor-Defendant.

## PLAINTIFFS' MOTION TO ENTER PROTECTIVE ORDER

In accordance with Federal Rule of Civil Procedure 26(c), Plaintiffs move the Court to enter a protective order in the above-captioned case governing the treatment of certain sensitive political information to be produced by Plaintiffs in response to discovery requests by the Defendants, Beverly R. Gill, et al., and the Intervenor-Defendant, the Wisconsin State Assembly. Plaintiffs presented opposing counsel with a proposed protective order based on the template prepared by the Western District of Wisconsin Bar Association, modified for the specific facts and legal issues in this action. Although the parties agree on the bulk of the language in the Proposed Protective Order,[1] the Assembly does not agree on including an "Attorneys Eyes Only" ("AEO") designation, which is included in the template protective order, and which Plaintiffs

---

[1] The protective order that Plaintiffs ask this Court to enter, with the language to which the Assembly does not agree (all related to the "Attorneys' Eyes Only" designation) highlighted in gray, is attached to the contemporaneously filed declaration of Annabelle E. Harless, dated March 15, 2019 ("Harless Declaration") as Exhibit 1 ("Proposed Protective Order").

believe is necessary to protect their constitutional rights.[2] The Defendants take no position on the motion and will abide by whatever protective order the Court enters. In support of this motion, Plaintiffs state as follows:

1. Plaintiffs believe an AEO designation is necessary to protect their reasonable and serious First Amendment concerns about the disclosure of sensitive political associational information, including organizations' internal political strategic information and the identity of political associates, to the party that burdened their First and Fourteenth Amendment rights in the drawing of Act 43 (the Assembly and its employees and agents), causing the injuries for which they seek redress in this action. In particular, there is a reasonable probability that Plaintiffs and/or their political associates will suffer chilling effects from compelled disclosure of their political associations and internal organizational political strategy, or retaliatory or punitive actions by the Assembly, its political leadership, or individual representatives. Rather than asserting (or continuing to assert) a First Amendment privilege over this information, as a compromise, Plaintiffs propose entering the Proposed Protective Order with an AEO designation so that Plaintiffs' political adversaries (the Assembly and its members) will not be given the sensitive information directly, but its counsel can view and use the requested information as necessary for the case.

2. The vast majority of documents, deposition testimony, interrogatory responses, or other discovery material produced by Plaintiffs would be marked as "Confidential" – a designation that all parties agree should be included in the protective order – and will not be

---

[2] Although the Western District of Wisconsin Bar Association's protective order is designed for intellectual property cases, some of the political associational information at stake here would similarly put Plaintiffs at a disadvantage if it was turned over to their political rivals, particularly since the party requesting the sensitive information has already used Plaintiffs' political affiliation information to discriminate against them. Further, the Assembly has provided no compelling reason why the AEO designation is inappropriate in this case, even after Plaintiffs communicated their serious First Amendment concerns.

marked with an AEO designation. For example, the Assembly served a set of document production requests on all forty individual Plaintiffs on December 13, 2018. Plaintiffs complied with these requests, producing over 8,000 pages of documents, very few of which would be designated as AEO under the protective order. The AEO designation would be reserved only for particularly sensitive information related to the First Amendment associational rights of a select few of the forty Plaintiffs.

3. Because of the sensitive nature of some of the information the Assembly is asking Plaintiffs to produce, as well as the identity of the parties involved in this litigation, a few Plaintiffs request the ability to mark a limited portion of documents, testimony, or discovery responses containing sensitive political information with the AEO designation. The information in question involves the internal political strategy of various political organizations or groups, or the identity of certain political associates. Only two Plaintiffs have completely withheld such information to date, including redacting documents with information protected by the First Amendment privilege, producing a privilege log, and asserting a First Amendment privilege at deposition.[3]

4. The First Amendment protects the right to association. Where compelled disclosure is likely to entail a substantial restraint on one's freedom of association, the compelled disclosure violates the First Amendment. *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462-63

---

[3] The withheld information includes certain social media posts to closed (private) Facebook groups of political organizations that were redacted by Plaintiff Patel (containing internal political strategy of the Ozaukee County Democratic Party, the Wisconsin Democratic Party, or the political organization D6-Fawn); the identity of political associates or strategy and activities of the Ozaukee County Democrats' Candidate Task Force that Plaintiff Patel refused to testify about at deposition; and the names of two associates that Plaintiff Schnick refused to testify about at her deposition. Many of the redacted portions of Plaintiff Patel's documents, as well as most of the activities of the Ozaukee County Democrats' Candidate Task Force, are not at all relevant to this case because they concern internal political strategy for events or political offices that do not relate to Plaintiffs' claims about Act 43 or the burdening of associational activity relating to Assembly elections.

(1958). Courts have specifically found compelled disclosure to abridge the First Amendment right of association where the disclosure applies to an individual's political associates, an individual's communications with political associates, or an organization's discussions of internal strategic plans. *See, e.g.*, *id.*; *Perry v. Schwarzenegger*, 591 F. 3d 1147, 1142 & n.9 (9th Cir. 2010) (stating that the "right to associate with others to advance one's shared political beliefs" includes "the right to exchange ideas and formulate strategy and messages, and to do so in private"); *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (prohibiting disclosure of a political organization's "internal planning materials," because requiring disclosure would "frustrate those groups' decisions as to how to organize...conduct...[their] affairs, and select [their] leaders, as well as their selection of a message and...the best means to promote that message") (quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 230-31 & n.21 1989); *Wyoming v. U.S. Dept. of Ag.*, 208 F.R.D. 449, 454-55 (D.D.C. 2002) (disclosure of "internal communications…would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment'") (quoting *Fed. Election Comm. v. Machinists Non-Partisan Polit. League*, 655 F.2d 380, 388 (D.C. Cir. 1981)); *Dunnet Bay Construction Co. v. Hannig*, No. 10-cv-3051, 2011 WL 5417123, at *5 (C.D. Ill. Nov. 9, 2011) ("[D]isclosure of private internal communications among [a political organization's] staff, volunteers, and supporters would have a chilling effect on their rights by discouraging them from communicating candidly"); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, No. 75-cv-5388, 1985 WL 315, at *8 (S.D.N.Y. Feb. 28, 1985) ("[T]he right of associational privacy [applies to] compelled disclosure of the identity of an association's members or sympathizers…").

5. The party asserting an associational privilege must first show an "arguable first amendment infringement." *Tree of Life Christian Sch. v. City of Upper Arlington*, No. 2:11-cv-

4

00009, 2012 WL 831918, at *3 (S.D. Ohio Mar. 12, 2012) (citing *Perry*, 591 F. 3d at 1160). In other words, "the party must 'demonstrate an objectively reasonable probability that disclosure will chill associational rights.'" *Tree of Life Christian Sch.*, 2012 WL 831918, at *3 (quoting *Independence Inst. v. Gessles*, No. 10-cv-00609, 2011 WL 809781, at *2 (D. Colo. Mar. 2, 2011)).

6. If the party asserting the privilege carries this burden, the burden then shifts "to the party seeking discovery to 'demonstrate an interest in obtaining the disclosures it seeks…which is sufficient to justify the deterrent effect…on the free exercise…of [the] constitutionally protected right of association.'" *Tree of Life Christian Sch.*, 2012 WL 831918, at *3 (quoting *Perry*, 591 F.3d at 1161). Courts consider several factors in this analysis, "including (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Id.* "The party seeking discovery must demonstrate that the information sought is highly relevant to the claims or defenses in the case, a more stringent showing than is required by the general relevancy requirement under Rule 26(b)(1)." *Ohio Organizing Collaborative v. Husted*, 2:15-cv-01802, 2015 WL 7008530, at *3 (S.D. Ohio Nov. 12, 2015).

7. Here, Plaintiffs could easily show "an objectively reasonable probability that disclosure will chill associational rights." *Tree of Life Christian Sch.*, 2012 WL 831918, at *3. Two federal courts have commented on or found that that the map drawers, including employees and agents of the Assembly, had a discriminatory partisan intent in drawing Act 43. The *Baldus v. Brennan* court stated that comments by the "drafters to the effect that they were not influenced by partisan factors" were "almost laughable." 849 F. Supp. 2d 840, 851 (E.D. Wis. 2012). And, in the Court's opinion after the first trial in this case, this Court found that the drafters had the

discriminatory intent to "burden the representational rights of Democratic voters throughout the decennial period by impeding their ability to translate their votes into legislative seats." *Whitford v. Gill*, 218 F. Supp. 3d 837, 884-896 (W.D. Wis. 2016). The individuals involved in drawing the Assembly districts that generated those findings include current Assembly Speaker Robin Vos (who at the time Act 43 was adopted was a member of the legislative leadership but not yet Speaker) and Assembly aide Adam Foltz, who, to Plaintiffs' knowledge, is still employed by the Assembly. These circumstances plainly show a reasonable probability that Plaintiffs' disclosure of sensitive political information – about how Democratic political organizations intend to carry out their strategic goals, or the identity of their political associates – to the same party and its individual members that have discriminated against them on the basis of partisanship, would subject them to retaliation and/or chill their associational rights.[4] *See, e.g., Ohio Organizing Collaborative*, 2015 WL 7008530, at *3 (stating "[t]he Court has no doubt that the compelled disclosure of such sensitive information [including membership and strategic information] in the context of highly charged litigation involving issues of great political controversy would have a chilling effect on plaintiffs' freedom of association by adversely impacting their ability to organize, promote their message(s), and conduct their affairs") (quoting *AFL-CIO*, 333 F. 3d 168 at 177).

---

[4] Plaintiffs concerns of retaliation and the chilling effects of disclosure are based not only on how they themselves have been burdened and targeted by the Assembly in the past, but also on how their political associates have been burdened and targeted by the Assembly, its leadership, and its individual members. For example, Representative Sandy Pasch, who used to be the Assembly Representative for Plaintiffs Patel, Lentini, Switzenbaum, Wallace, and Sundstrom, had her district "demolished" and carved into five new districts by the map drawers. "Republican Assembly leaders later told Rep. Pasch that Senate Republicans demanded the changes to her district to 'screw' her for 'running against Alberta [Darling]'" in the 2012 recall election. Rep. Pasch also stated that following Act 43, "Republican lawmakers enacted new rules that limit[ed] Democrats' ability to speak on legislation and refused to consider Democrat-sponsored amendments. As Rep. Pasch put[] it, 'Not only could [Democrats] not legislate, now we could not speak.'" *See* Brief for Amici Curiae Bipartisan Group of 65 Current and Former State Legislators in Support of Appellees, *Gill v. Whitford*, No. 16-1161, at 13, 17 (Sept. 5, 2017), https://www.scotusblog.com/wp-content/uploads/2017/09/16-1161-bsac-bipartisan-group.pdf. Similarly, Rep. Amy Sue Vruwink, who represented Plaintiffs Stevning-Roe and Dieterich before Act 43, was approached by an Assembly Republican leader who told her "We f---ed you. We f---ed you good." *Id*. at 14.

8. Plaintiffs' deposition testimony also demonstrates an objectively reasonable probability that compelled disclosure of such information to the Assembly could chill their political activity, the activity of political associates, or that they or their political associates could be the subject of retaliation by the Assembly, its leadership, or its individual members. For example, at her deposition, Plaintiff Patel stated the following:

> Q: Do you believe that, based on any information they learn about you or your associates, that the Wisconsin State Assembly, or any of its members, might undertake adverse action against your associates?
>
> A: This is what I can honestly say. And it hurts to say it. I'm going to start to cry. I don't not believe it. When I read a brief in the Whitford case that an assemblyman had said to an assembly woman after the gerrymandering, "we f[---]ed you, we f[---]ed you good"—I'm sorry, you can put asterisks in that if you want—when I heard that some of the lines were drawn to retaliate against Sandy Pasch, when I saw the way the Democratic assembly candidates were treated during the election, because I know this gerrymandering was done in secret, because I know that the people that did it don't seem to care, I have to say that I do not know. That I have lost such faith in the Republicans in the assembly. And that is a devastating thing to have to say for someone who believes in the rule of law and institutions. It's very hard for me to say that.[5]

Plaintiff Allison Seaton stated the following, when she was asked by Attorney St. John to give the names of individuals:

> Q: Which individuals no longer volunteer for the campaigns from West Point that you used to associate with?
>
> A: Do you want their names?
>
> Q: Sure. Yes, please.
>
> A: I think I'd have to ask what you're going to do with their names. I'm not comfortable giving other people's names.

---

[5] Deposition Transcript of Deborah Patel, January 15, 2019, Harless Declaration Ex. 3 at 49:1-23. *See also id.* at 78-79 (stating that, regarding redacting for privilege private Facebook posts to political organizations, she "fear[s] for the possibility" of retaliation against her political associates); *see also id.* at 90:14-91:1 ("I feel like – I feel – I feel strongly that if I answer that question, there may be retribution. I just – I'm sorry."); *see also id.* at 139-141, 144:17-146:17.

7

Q: I'd ask that you can identify a single person who you used to associate with with respect to the campaigns who no longer assist you with the campaigns today in those assembly districts, that you just identify for me who they are.

A: Okay. But I now will have to call them and tell them that I identified them…"[6]

Plaintiff Elizabeth Lentini stated the following at her deposition:

Q: Does it seem farfetched that an assembly member would take action against you for associating with others?

A: I guess it's hard to really understand what you're getting at. To say I'm fearful? I mean, I'm – I mean, I know that Sandy Pasch was districted out of her district by Act 43, so I know that I've seen that kind of action take place. For me, personally? You know, if I keep writing and they don't like what I'm saying maybe they'll do something to Whitefish Bay. I guess it's possible. It's not unheard of. But I can't think of anything off the top of my head.

Q: As you sit here today, does it seem farfetched that Representative Ott could somehow punish you – Scratch that. Let's move on. Could you imagine a member of the assembly taking physical action against you for your associating with other Democrats?

    Ms. Harless: Objection to form.

A: Gosh, I surely hope that would never happen.

Q: Does that seem farfetched?

A: I don't know these days with the partisan wrangling. It's extraordinary what can happen out there. People seem to have lost their senses. But I hope not.[7]

9.     By contrast, the Assembly cannot show "that the information sought is so relevant that it goes to the 'heart of the matter'; that is, the information is crucial to the party's case." *Anderson v. Hale*, 2001 WL 503045, at *4 (N.D. Ill. May 10, 2001). **First**, much of the information that Plaintiffs have withheld under a First Amendment privilege (and/or would mark as AEO) is simply not relevant at all to the Assembly's claims in this case, let alone highly

---

[6] Deposition Transcript of Allison Seaton, February 6, 2019, Harless Declaration Ex. 4 at 87:10-24.
[7] Deposition Transcript of Elizabeth Lentini, January 18, 2019, Harless Declaration Ex. 2 at 81:13-82:15.

relevant.[8] For example, Plaintiff Patel's posts to the Ozaukee County Democrats' or D6-Fawn's closed Facebook groups about internal political strategy for U.S. Representative Glenn Grothman's town hall events are irrelevant to any claims Plaintiffs are bringing, or any plausible defenses the Assembly could be using in this case. This case is solely about the impact of Act 43 on Plaintiffs' political activity at the Assembly level. Although Plaintiffs do not think any of the sensitive information is highly relevant or crucial to the Assembly's case, the AEO designation would allow Plaintiffs to provide counsel with the information, while still protecting Plaintiffs' First Amendment rights. ***Second***, Plaintiffs have already produced thousands of pages of documents (including, but not limited to: communications with local, state, and federal elected representatives or staff, letters to the editor, blog posts, and Instagram, Facebook, Twitter, or other social media posts), interrogatory responses listing political activity, political contributions, voting behavior, and the harms and burdens of Act 43, and all 40 Plaintiffs have been or will be deposed. These materials have provided the Assembly with numerous opportunities to discover information that is actually relevant to the Assembly's defenses, without compelling disclosure of Plaintiffs' protected associational information.[9] In short, the Assembly has not met the heightened showing required to overcome Plaintiffs' core First Amendment rights to keep sensitive political associational information private and out of the hands of political rivals.

---

[8] Indeed, such discovery requests likely exceed the relevance and proportionality bounds of Federal Rule of Civil Procedure, Rule 26(b)(1). In the Western District of Wisconsin in particular, "all discovery requests must comply with Rule 26(b)(1), which requires discovery requests to be 'proportional to the needs of the case.'" *See, e.g., Weather Shield Mfg., Inc. v. Drost*, No. 17-CV-294-JDP, 2017 WL 7053652, at *1 (W.D. Wis. Nov. 16, 2017) (Peterson, J.).

[9] For example, the Assembly sent the individual plaintiffs a broad document production request asking for the following: "All posts to blogs, Facebook, Twitter, Instagram, or other forms of social media written by each Plaintiff that relate to politics, public policy issues, or political parties." Plaintiffs complied with this request, producing copies of all such posts from Plaintiffs' private Facebook accounts, or links to Plaintiffs' public Facebook pages for inspection and review. In Plaintiff Patel's case, this means that without access to the few closed Facebook group posts with sensitive political information that were marked as privileged, the Assembly already has access to a very large number of public political posts and information from Plaintiff Patel. The Assembly thus has more than enough material to obtain any relevant information it could possibly need without fishing into Plaintiffs' information protected by the First Amendment.

10. For this reason, Plaintiffs propose a protective order that allows the parties to mark particularly sensitive political information with an AEO designation. As demonstrated above, a protective order without the ability to mark particularly sensitive information with an AEO designation would not cure the chilling effect of disclosing sensitive political information to Plaintiffs' political adversaries (the same party that has already discriminated against the Plaintiffs). *See, e.g., Perry* 591 F.3d at 1164 ("A protective order limiting dissemination of [internal political] information will ameliorate but cannot eliminate these threatened harms"); *Ohio Organizing Collaborative,* 2:25-cv-01802, slip op. at 9-10 ("It is the very fact that defendants would have access to this sensitive information that gives rise to the [Plaintiffs'] First Amendment concerns."). The AEO designation is a compromise that would allow the Assembly's counsel to obtain the information they think they need, while protecting Plaintiffs' serious First Amendment concerns.

11. The Assembly's stated reasons for objecting to the AEO designation are that the Assembly's counsel thinks it is "not warranted in this case," and it would "interfere[] with [counsel's] ability to consult [their] clients about the case." But very little of the information Plaintiffs have produced or testified to would be marked with an AEO designation, and none of it is highly relevant to the Assembly's defenses. The Assembly has failed to offer any explanation of how the AEO designation would actually interfere with counsels' ability to consult with their clients about the case in any meaningful way. Thus, the Assembly's assertions are simply unfounded. As demonstrated above, because of the sensitive nature of the political information at issue and the parties involved in this case, the AEO designation is reasonable and necessary to protect Plaintiffs' First Amendment rights. And Plaintiffs' First Amendment rights, guaranteed by the Constitution, clearly outweigh the Assembly's unsupported claimed need for its counsel to

consult with the Assembly, its leadership, or its individual members about Plaintiffs' sensitive political information.

WHEREFORE, for the reasons stated above, Plaintiffs respectfully request that this Court enter the Proposed Protective Order, including the proposed AEO designation.

Dated: March 15, 2019.                    Respectfully submitted,

/s/ Annabelle E. Harless
Annabelle E. Harless
Ruth M. Greenwood
CAMPAIGN LEGAL CENTER
73 W. Monroe St., Ste. 302
Chicago, IL 60603
(312) 561-5508
aharless@campaignlegalcenter.org
rgreenwood@campaignlegalcenter.org

/s/ Douglas M. Poland
Douglas M. Poland
State Bar No. 1055189
Alison E. Stites
State Bar. No. 1104819
RATHJE WOODWARD, LLC
10 East Doty St., Ste. 507
Madison, WI 53703
(608) 960-7430
dpoland@rathjewoodward.com
astites@rathjewoodward.com
*Attorneys for Plaintiffs*
4821-5088-3467, v. 1