IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WILLIAM WHITFORD, et al.,

   Plaintiffs,

   v.          No. 15-cv-421-jdp

BEVERLY R. GILL, et al.,

   Defendants;

   and

THE WISCONSIN STATE ASSEMBLY,

   Intervenor-Defendant.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS BY ROBIN J. VOS**

Ruth M. Greenwood
Annabelle E. Harless
CAMPAIGN LEGAL CENTER
73 W. Monroe St., Ste. 302
Chicago, IL 60603
(312) 561-5508
rgreenwood@campaignlegalcenter.org
aharless@campaignlegalcenter.org

Douglas M. Poland
State Bar No. 1055189
Alison E. Stites
State Bar. No. 1104819
RATHJE WOODWARD LLC
10 East Doty St., Ste. 507
Madison, WI 53703
(608) 960-7430
dpoland@rathjewoodward.com
astites@rathjewoodward.com

Nicholas O. Stephanopoulos
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 E. 60th St.
Chicago, IL 60637
(773) 702-4226
nsteph@uchicago.edu

Mark P. Gaber
J. Gerald Hebert
Danielle M. Lang
CAMPAIGN LEGAL CENTER
1411 K. St. NW, Ste. 1400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegalcenter.org
ghebert@campaignlegalcenter.org
dlang@campaignlegalcenter.org

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

I.  Procedural history ............................................................................................. 2
II. Substance of discovery sought ......................................................................... 3

ARGUMENT ............................................................................................................. 5

I.  Speaker Vos waived his ability to assert legislative immunity or legislative
    privilege. ........................................................................................................... 5
    A.  Speaker Vos waived his ability to assert legislative immunity because
        the Assembly intervened in the case. ..................................................... 5
    B.  Speaker Vos waived his ability to assert legislative privilege because
        the Assembly has opened the door to offering evidence as to the intent
        behind the drawing of the Act 43 districts. ............................................ 6
    C.  Speaker Vos waived his ability to invoke legislative privilege by
        involving non-legislative staff, namely outside consultants, in the
        legislative process. ................................................................................. 7

II. Even if Speaker Vos has not waived legislative immunity or privilege, he
    cannot assert legislative immunity in a federal voting rights case because
    it involves an important federal interest ........................................................ 9

III. Even if Speaker Vos may invoke legislative privilege, it does not prevent
    discovery here because it is a qualified privilege and Plaintiffs can establish
    that it is necessary according to the *Rodriguez* factors .............................. 10
    A.  The requested testimony and documents are relevant because they have the
        potential to support Plaintiffs' claims as to district-specific partisan intent
        and the imposition of associational harms. .......................................... 11
    B.  The requested testimony and documents cannot be provided by other
        witnesses. ............................................................................................... 12
    C.  The rights at interest in this case are serious. ...................................... 14
    D.  The Wisconsin State Assembly's role in this litigation is voluntary. ...... 16
    E.  There is little risk that discovery from Speaker Vos will cause timidity
        by future government employees. ......................................................... 16

IV. Production of documents and appearance at a deposition are not
    sufficiently burdensome to outweigh the important needs of the case. ........ 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Alexander v. Holden*,
    66 F.3d 62, 66-67, 68 n.4 (4th Cir. 1995) ...................................................................7

*Baldus v. Brennan*,
    Nos. 11-CV-562-JPS-DPW-RMD, 11-CV-1011-JPS-DPW-RMD, 2011
    WL 6122542 (E.D. Wis. Dec. 8, 2011), *order clarified*, 2011 WL 6385645
    (E.D. Wis. Dec. 20, 2011) ...................................................................7,8,11,14

*Baldus v. Members of Wisconsin Gov't Accountability Bd.*,
    849 F. Supp. 2d 840 (E.D. Wis. 2012) .........................................................16

*Benisek v. Lamone*,
    241 F. Supp. 3d 566 (D. Md. 2017)........................................................10,13

*Bethune-Hill v. Va. State Bd. of Elections*,
    114 F. Supp. 3d 323 (E.D. Va. 2015) .........................................................8,15

*Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*,
    No. 11 C 5065, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011) ...................*passim*

*Common Cause v. Rucho*,
    318 F. Supp. 3d 777 (M.D.N.C. 2018) ..............................................................15

*Favors v. Cuomo*,
    285 F.R.D. 187 (E.D.N.Y. 2012) ...................................................................7,16

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018)........................................................................................3,5

*Lee v. Va. State Bd. of Elections*,
    No. 3:15CV357 (HEH-RCY), 2015 WL 9461505 (E.D. Va. Dec. 23, 2015) ...................7

*Loesel v. City of Frankenmuth*,
    No. 08-11131-BC, 2010 WL 456931 (E.D. Mich. Feb. 4, 2010) ......................................9

*Marylanders for Fair Representation, Inc. v. Schaefer*,
    144 F.R.D. 292 (D. Md. 1992) .........................................................................15

*Marylanders for Fair Representation, Inc. v. Schaefer*,
    849 F. Supp. 1022 (D. Md. 1994)...................................................................15

*Powell v. Ridge*,
    247 F.3d 520 (3d. Cir. 2001) ........................................................................6,17

*Rodriguez v. Pataki*,
    280 F. Supp. 2d 89 (S.D.N.Y. 2003) .............................................................7,11

*Tenney v. Brandhove*,
    341 U.S. 367 (1951) ........................................................................................3,9

*United States v. Carolene Products Co.*,
    304 U.S. 144 (1938) ...........................................................................................10

*United States v. Gillock*,
    445 U.S. 360 (1980) ........................................................................................9,10

**Cases** **Page(s)**

*United States v. Irvin*,
 127 F.R.D. 169 (C.D. Cal. 1989).................................................................16

*United States v. Marengo Cty. Comm'n*,
 731 F.2d 1546 (11th Cir. 1984) ...............................................................10

*Veasey v. Perry*,
 No. 2:13-CV-193, 2014 WL 1340077 (S.D. Tex. Apr. 3, 2014)......................15

*Whitford v. Gill*,
 218 F. Supp. 3d 837 (W.D. Wis. 2016), *vacated and remanded,*
 138 S. Ct. 1916 (2018) .........................................................................4,16

**Other Authorities** **Page(s)**

Wis. Const. Art. IV § 15.............................................................................3

## INTRODUCTION

Defendants and Intervenor-Defendant the Wisconsin State Assembly deny Plaintiffs' allegations that the Assembly created 29 districts in Act 43 with the intent to advantage Republicans at the expense of Democrats.[1] Intent to gerrymander is one of the three elements of Plaintiffs' vote dilution claims. This Court previously found that Plaintiffs had proved the Assembly's intent to gerrymander Assembly districts statewide, and entered judgment for Plaintiffs. The Supreme Court of the United States vacated that judgment, holding that Plaintiffs must show that intent on a district-by-district basis. Consequently, Plaintiffs now must prove that district-by-district intent to prevail at trial (again) under their legal theory.

The current Assembly Speaker Robin Vos is one of only two people who participated in meetings with each of the individual Republican legislators in 2011 while the new Assembly districts were being formulated to review with the Republican legislators their prospective district boundaries and constituents (the other person who participated in these meetings was Assembly aide Adam Foltz). Unquestionably, Speaker Vos possesses information and documents that go to the heart of Plaintiffs' claims and the showing that the Supreme Court has ruled they must make.

Despite the critical importance of district-by-district intent evidence on remand, counsel for both the Assembly and Speaker Vos seeks to bar Plaintiffs from gathering testimony from him, refusing to accept service of a subpoena on Speaker Vos for production of records and a deposition. Speaker Vos has also refused personal service of the subpoena. Plaintiffs must therefore seek this Court's intervention to compel Speaker Vos to appear for deposition and to respond to the production requests in the subpoena. Plaintiffs are entitled to this discovery for

---

[1] Allegations made in Complaint, dkt. 201, ¶¶ 19, 22, 25, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58, 61, 64, 67, 70, 73, 76, 79, 82, 85, 88, 91, 94, 97, 100, 103, 113, 114, 165 are all denied in Defendants' Answer, dkt. 207, which Intervenor-Defendants' adopt in Wisconsin State Assembly's Motion to Intervene Pursuant to Fed. R. Civ. P. 24(A) & (B), dkt. 209, at 2.

three separate reasons: (1) Speaker Vos has waived his claim to legislative immunity or legislative privilege; (2) even in the absence of waiver, the balance of factors in the applicable legal test favor Plaintiffs' discovery of Speaker Vos; and (3) the discovery sought does not impose an undue burden on Speaker Vos under Federal Rule of Civil Procedure 26(b)(1) because the burden of providing testimony is minimal compared with the importance of the evidence from Speaker Vos to this Court's evalution of the claims and defenses in this case. Accordingly, this Court should compel Plaintiffs' discovery of Speaker Vos, and award the relief sought in the accompanying motion.

## BACKGROUND

### I.    Procedural history

On February 13, 2019, Plaintiffs' counsel issued a cover letter, subpoena to testify at a deposition and to produce documents, a notice of deposition, and a witness fee by email and U.S. mail to Kevin St. John, one of the attorneys for the Assembly in this matter, and other counsel for defendants. *See* Declaration of Ruth Merewyn Greenwod, dated March 19, 2019 (hereafter "Greenwood Decl.") Exs. 2, 3. On February 20, 2019, Attorney St. John communicated (by telephone and letter dated February 20, 2019) that although he is counsel for Speaker Vos, he would not accept service of the subpoena, and he returned the witness fee. *See* Greenwood Decl., Ex. 4.

Attorney St. John stated in his February 20, 2019 letter that he would not accept service of the Subpoena because Speaker Vos is protected by legislative privilege or legislative immunity under state and federal law, and that subpoenaing Speaker Vos would divert his "time, energy, and attention away from legislative tasks and disrupt[] the important work of the Wisconsin legislature." Attorney St. John also asserted that "plaintiffs already have extensive factual materials relating to redistricting culminating in Act 43 from the *Baldus* litigation."

Plaintiffs' counsel explained in a letter sent by email on February 27, 2019 that neither legislative privilege nor legislative immunity applies to Speaker Vos's testimony in this case. *See* Greenwood Decl., Ex. 5. Attorney St. John again refused to accept service in a letter dated March 5, 2019. *See* Greenwood Decl., Ex. 6. In that letter, Attorney St. John explained, "We continue to maintain that Speaker Vos is immune from civil process, including subpoenas. *See, e.g.*, Wis. Const. Art. IV § 15, *Tenney v. Brandhove*, 341 U.S. 367, 377-78 (1951). Reissuing subpoenas will not address that deficiency." *Id.*

Plaintiffs attempted personal service of a subpoena on Speaker Vos on March 18, 2019, but that service was also rejected. Greenwood Decl., Exs. 10 and 11.

Plaintiffs now request that the Court either issue the Proposed Subpoena to Speaker Vos, *see* Greenwood Decl. Ex. 1, or order Attorney St. John to accept service of the February 13 and March 18 subpoenas on behalf of Speaker Vos, and order that Speaker Vos appear for a deposition and produce documents in accordance with the those subpoenas.

## II.   Substance of discovery sought

Plaintiffs seek to depose Speaker Vos as to two categories of evidence relevant to the claims set for retrial on remand in light of the Supreme Court's decision in *Gill v. Whitford*, 138 S. Ct. 1916 (2018). The categories are:

(1) testimony relating to how the Legislature reached its decision on the boundaries for each district in the 2011 redistricting maps (Act 43), including its motives, objective facts it relied on, and the involvement of others in the process, including the Redistricting Majority Project (REDMAP), the Republican National Committee, or other national Republican Party entities; and

(2) testimony as to the predicted and actual associational effects of Act 43 on the Democratic Party, Democratic voters, the Republican Party, and Republican voters.

As this Court is aware, at the trial of this action in 2016, Plaintiffs pursued a statewide theory of injury. This Court agreed with Plaintiffs, finding that the Assembly acted with discriminatory partisan intent on a statewide basis when it enacted 2011 Wisconsin Act 43, and

3

holding that Plaintiffs had proven standing to sue. *Whitford v. Gill*, 218 F. Supp. 3d 837, 898 (W.D. Wis. 2016), *vacated and remanded,* 138 S. Ct. 1916 (2018) ("[A]lthough Act 43 complied with traditional redistricting principles, it nevertheless had as one of its objectives entrenching the Republicans' control of the Assembly.") Declining to rule on the merits of Plaintiffs' claims or this Court's substantive rulings, the Supreme Court disagreed with Plaintiffs' (and this Court's) statewide injury theory of standing, instead holding that "[t]o the extent that the plaintiffs' alleged harm is the dilution of their votes, that injury is district specific." *Whitford*, 138 S. Ct. at 1920-21. Although two of the Justices would have remanded this case with instructions to this Court to dismiss for lack of standing, the majority opinion, authored by Chief Justice Roberts, instead ordered the action remanded to this Court "so that the plaintiffs may have an opportunity to prove concrete and particularized injuries using evidence—unlike the bulk of the evidence presented thus far—that would tend to demonstrate a burden on their individual votes." *Id.* at 1934. That proof, as the Supreme Court announced, must be district-specific for each plaintiff.

In accordance with the Supreme Court's opinion and order, on remand Plaintiffs seek to discover and provide evidence to the Court at trial that not only did the Assembly act with **statewide** partisan intent and effect, but also with **district-specific** partisan intent and effect in the 29 districts challenged as unconstitutionally diluting Plaintiffs' votes in violation of the Fourteenth Amendment. Although the record developed at trial in 2016 contains some evidence as to the Assembly's district-specific partisan intent in gerrymandering certain districts in favor of the Republican candidates, *see Whitford*, 218 F. Supp. 3d at 890-898, Defendants—including the Assembly, which did not participate in the first trial—still dispute that Plaintiffs can prove district-specific evidence, and they have not conceded the point. Unless Defendants are willing to stipulate that the record evidence already admitted at trial establishes that the Assembly acted

with district-specific intent to gerrymander in creating the Assembly districts at issue on remand, Plaintiffs have a need to discover and present that evidence. Based on discovery taken to date, the only witness who has not yet testified and can provide unique district-specific evidence is Speaker Vos. As discovery has revealed, Speaker Vos was one of only two participants in every meeting with the individual members of the Republican Assembly caucus in 2011 to discuss the district boundaries and constituencies as the district boundaries were being developed. *Infra* pp. 11-14. Plaintiffs seek to gather testimony from Speaker Vos as to the intent behind the drawing of each of the 29 districts challenged as diluting the vote of individual Plaintiffs.

Moreover, Plaintiffs have a need to take Speaker Vos's deposition to elicit testimony relating to their associational claims. Justice Kagan, in her concurrence in *Gill*, explained that with respect to Plaintiffs' claims that their associational rights have been burdened under the First Amendment, the evidence necessary to prove such a claim includes whether "[m]embers of the 'disfavored' party in the State . . . face difficulties fundraising, registering voters, attracting volunteers, generating support from independents, and recruiting candidates to run for office (not to mention eventually accomplishing their policy objectives)." *Whitford*, 138 S. Ct. at 1938. Speaker Vos is in a unique position to provide testimony as to the intended and actual First Amendment burdens, given his integral role in participating in the development of the districts included in Act 43 and as the current head of the Wisconsin Republican Assembly Campaign Committee.

## ARGUMENT

**I.    Speaker Vos waived his ability to assert legislative immunity or legislative privilege.**

**A.  Speaker Vos waived his ability to assert legislative immunity because the Assembly intervened in the case.**

Assembly members, including Speaker Vos, have waived any claim to legislative immunity in this case by intervening as a defendant and actively participating in the litigation,

including filing motions and discovery requests. The question as to waiver of legislative immunity by intervention in a lawsuit arose for the Third Circuit in *Powell v. Ridge*, 247 F.3d 520 (3d. Cir. 2001). In that case, plaintiffs brought a Title VI action against state officials with respect to state funding of public education. Legislative leaders intervened as defendants to "articulate to the Court the unique perspective of the legislative branch" in the case. *Id.* at 522 (citation omitted). The intervening defendants later sought to claim legislative immunity from compliance with discovery requests. *Id.* at 525. The Court held that "Legislative Leaders" of the Pennsylvania General Assembly were not entitled to assert legislative immunity because they "voluntarily joined" the suit (as intervening defendants), and a "proper invocation of legislative immunity would typically call for the dismissal of a legislator from the lawsuit," and therefore could not be made by parties that voluntarily joined and "continue[d] to actively participate in this litigation." *Id.* at 525. The court explained:

> "Appellants suggest that we recognize a form of legislative immunity heretofore unknown in the law, one which can best be described as 'partial legislative immunity.' Thus, and it is not disputed, the immunity appellants assert would enable them to seek discovery, but not respond to it; take depositions, but not be deposed; and testify at trial, but not be cross examined. Moreover, appellants presumably believe that when they come upon an aspect of the litigation they find disagreeable, as they find the discovery order at issue here to be, they will be able to pursue an interlocutory appeal in this Court. We disagree[.]"

*Id.* at 522.

### B. Speaker Vos waived his ability to assert legislative privilege because the Assembly has opened the door to offering evidence as to the intent behind the drawing of the Act 43 districts.

At the first trial of this action in 2016, the Defendants called Adam Foltz, a legislative aide to the Assembly, to testify about the Assembly's intent in drawing the Act 43 districts. *See* Trial Transcript, May 24, 2016, dkt. 147, 153:22-159:10 (Adam Foltz – direct - highlighting population deviation, compactness, contiguity, disenfranchisement, and incumbency protection as factors considered by Republican members of the Assembly when drafting Act 43); *see also*

Trial Transcript, May 25, 2016, dkt. 148, 78:11-81:16 (Tad Ottman – direct – highlighting the considerations that went into discarding draft maps and legislator input on draft maps).

Given that the Assembly allowed Defendants to elicit this testimony from Foltz in defense of Act 43, the Court should not allow the Assembly—joined as a defendant at its own request—to invoke privilege to shield Speaker Vos from questioning as to whether and how partisan intent was a factor the Assembly considered in drawing the Act 43 districts, and from producing relevant documents. That the Assembly was not a party to this action when Foltz testified in 2016 is of no moment. As federal authority holds, the Assembly "'cannot invoke the privilege as to themselves yet allow others to use the same information against the plaintiffs at trial.' Accordingly, once the privilege is invoked, the Court should not later allow the proponent of the privilege to strategically waive it to the prejudice of other parties." *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *11 (N.D. Ill. Oct. 12, 2011)).

### C.  Speaker Vos waived his ability to invoke legislative privilege by involving non-legislative staff, namely outside consultants, in the legislative process.

Legislators waive legislative privilege over matters discussed with third parties, including "knowledgeable outsiders" like lobbyists and activists. *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *10; *see also Lee v. Va. State Bd. of Elections*, No. 3:15CV357 (HEH-RCY), 2015 WL 9461505, at *7 (E.D. Va. Dec. 23, 2015) (citing *Alexander v. Holden*, 66 F.3d 62, 66-67, 68 n.4 (4th Cir. 1995)); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003); *Baldus v. Brennan*, Nos. 11-CV-562-JPS-DPW-RMD, 11-CV-1011-JPS-DPW-RMD, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011), , *order clarified*, 2011 WL 6385645 (E.D. Wis. Dec. 20, 2011).

With respect to the drafting of Act 43, the three-judge federal panel from the Eastern District of Wisconsin in *Baldus v. Brennan* already found once before that legislative privilege has been waived:

> First, and most importantly, the Court finds it all but disingenuous for the Legislature to argue that these items be subject to privilege in a Court proceeding determining the constitutionality of the Legislature's actions, when the Legislature clearly did not concern itself with maintaining that privilege when it hired outside consultants to help develop its plans. The Legislature has waived its legislative privilege to the extent that it relied on such outside experts for consulting services.

2011 WL 6122542, at *2. That same conclusion applies here.

The first category of discovery sought includes a request as to communications between additional outsiders to the legislative process, specifically, various national Republican entities including the Redistricting Majority Project (REDMAP) and the Republican National Commitee. These communications are not protected by legislative privilege. *See Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *10 ("Although these groups may have a heightened interest in the outcome of the redistricting process, they could not vote for or against the Redistricting Act, nor did they work for someone who could. As such, the legislative privilege does not apply."); *see also Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 347 (E.D. Va. 2015) ("Intervenors also may not claim privilege for communications shared freely with, or in the presence of, outside organizations, including campaign committees and political parties.").

Therefore, even if this court were to find that Speaker Vos enjoys a broad legislative privilege, communications about the drafting of Act 43 with national Republican entities are not protected by such a privilege and Plaintiffs are entitled to take discovery with respect to these communications.

II.     **Even if Speaker Vos has not waived legislative immunity or privilege, he cannot assert legislative immunity in a federal voting rights case because it involves an important federal interest.**

In recognizing a legislative immunity for state legislators under federal common law, the Supreme Court analogized this immunity to that granted to federal legislators under the Speech and Debate Clause of the U.S. Constitution. *See Tenney v. Brandhove*, 341 U.S. 367, 373 (1951). The Court subsequently identified two justifications for the Clause: (1) to protect against intrusion into Congressional affairs by the Executive and Judicial Branches, thereby promoting separation of powers, and (2) to protect legislative independence. *See United States v. Gillock*, 445 U.S. 360, 369 (1980).

However, the Court has also held that the "Federal Speech or Debate Clause . . . is a limitation on the Federal Executive, but by its terms is confined to federal legislators." *Id.* at 374. With respect to maintaining a separation between coequal branches of government, it observed that the relationship between the federal government and state governments is not equal. Under the Supremacy Clause, "federal enactments will prevail over competing state exercises of power," thus negating the "struggles for power between the federal and state systems such as inspired the need for the Speech or Debate Clause as a restraint on the Federal Executive to protect federal legislators." *Id.* at 370; *see also Loesel v. City of Frankenmuth*, No. 08-11131-BC, 2010 WL 456931, at *5 (E.D. Mich. Feb. 4, 2010). As to legislative independence, the Court was careful to limit the finding from *Tenney* on the grounds that it involved "a civil action brought by a private plaintiff to vindicate private rights." *Tenney*, 341 U.S. at 372. Thus, "where important federal interests are at stake . . . comity yields." *Id.* at 373.

Voting rights cases represent an important federal interest that overrides state legislative immunity because voting rights are not private rights. The plaintiff in *Tenney* claimed that the

California legislature's "un-American activities" panel had violated his First Amendment right to free speech, which the *Gillock* Court had deemed a private right. By contrast, federal courts have long recognized the right to vote as a public right. *See United States v. Carolene Products Co*., 304 U.S. 144, 152 n.4 (1938); *United States v. Marengo Cty. Comm'n*, 731 F.2d 1546, 1554 (11th Cir. 1984) ("There is no question that this case is a public matter, concerning the most fundamental of public rights, the right to participate in the political process."); *Machesky v. Bizzel*, 414 F.2d 283, 288-89 (11th Cir. 1969) (citing *Carolene Products*, 304 U.S. at 152)) ("The most important public rights and the ones involved here, however, are political rights which determine the composition of government and the direction of government policy . . . Listed by Justice Stone as included within public rights were voting, dissemination of information, political organization, and peaceable assembly."); *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *6 ("Voting rights cases, although brought by private parties, seek to vindicate public rights. In this respect, they are akin to criminal prosecutions.").

### III.   Even if Speaker Vos may invoke legislative privilege, it does not prevent discovery here because it is a qualified privilege and Plaintiffs can establish that it is necessary according to the *Rodriguez* factors.

In the context of redistricting litigation, "witnesses can, in theory, benefit from the federal common law doctrine of legislative privilege, [but] that privilege is *qualified*, not absolute." *Benisek v. Lamone*, 241 F. Supp. 3d 566, 572 (D. Md. 2017). To determine the extent to which a "state lawmaker may invoke legislative privilege," courts consider the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Comm. for a Fair & Balanced Map*, 2011 WL

4837508, at *7 (citing *Rodriguez v Pataki*, 280 F. Supp.2d 89, 101 (S.D.N.Y. 2003)), *cited with approval* in *Baldus*, 2011 WL 6122542, at *3 (hereafter the "*Rodriguez* factors").

Each of these five factors weighs against applying legislative privilege to shield Speaker Vos from the discovery sought by Plaintiffs.

**A. The requested testimony and documents are relevant because they have the potential to support Plaintiffs' claims as to district-specific partisan intent and the imposition of associational harms.**

The first category of discovery sought by Plaintiffs is how the legislature decided to draw the specific boundaries of each of the 29 Assembly districts in Act 43 that Plaintiffs challenge on remand. This topic was explicitly found to be relevant and a proper subject of discovery, in a way that abrogated a claim to legislative privilege, in the context of the partisan gerrymandering claim asserted (and later withdrawn) in *Baldus v. Brennan*, 2011 WL 6122542, at *1 (holding that "any documents or testimony relating to how the Legislature reached its decision on the 2011 redistricting maps are relevant to the plaintiffs' claims as proof of discriminatory intent").

With respect to the second category of discovery sought from Speaker Vos, Plaintiffs' claims on remand put at issue whether the Democratic Party, to which Plaintiffs belong or adhere, has suffered a range of associational harms, including being "deterred from, and hindered in, turning out to vote, registering voters, volunteering for campaigns, donating money to candidates, running for office, appealing to independents, and advocating and implementing their preferred policies." Am. Compl., dkt. #210 at ¶17. Any knowledge Speaker Vos has as to the intended or actual effect of Act 43 on these associational rights is relevant to Plaintiffs' First Amendment claim.

Given that both categories of discovery sought are relevant to claims in the case, this factor weighs in favor of disclosure of the testimony.

**B.  The requested testimony and documents cannot be provided by other witnesses.**

The evidence presented in the first trial in this case established that there were two key sets of meetings among the drafters of Act 43 in 2011 that determined the boundaries of each individual district: "regional meetings" among the drafters and legislative leadership, and "individual legislator meetings" between individual members of the Republican Assembly caucus, legislative aide Adam Foltz, and Speaker Vos.

Foltz testified that legislative leadership ultimately chose the boundaries of specific districts from a series of alternatives presented at meetings that included Senate majority leader Fitzgerald, then-Speaker Fitzgerald, Senator Zipperer, then-Representative Vos, and Representative Suder (hereafter "Regional Meetings"). Adam Foltz Trial Testimony May 24, 2016, dkt. 147, 162:20-164:19; Deposition of Adam Foltz, March 31, 2016, dkt. 113, 74:5-11. At the Regional Meetings, the legislative leadership "involvement was specifically the determination of multiple regional alternatives, which direction they would prefer to go." Deposition of Adam Foltz dated March 31, 2016, dkt. 147, 74:21-23.

In addition to the Regional Meetings, Foltz testified that he and Representative Vos met with "each and every Republican member of the Assembly about their new districts" starting on June 19, 2011 to determine if any changes needed to be made to the district boundaries that had been decided on at the regional meetings (hereafter the "Individual Legislator Meetings"). Adam Foltz Trial Testimony May 24, 2016, dkt. 147, 95:15-96:17, 99:25-199:3.

The record in this case contains circumstantial evidence as to both statewide and district-specific intent to advantage Republicans through the drafting of Act 43. Specifically, this Court concluded:

> In sum, from the outset of the redistricting process, the drafters sought to understand the partisan effects of the maps they were drawing. They designed a measure of partisanship and confirmed the accuracy of this measure with Professor Gaddie. They used this measure to evaluate regional and statewide maps that they drew.

12

> They labeled their maps by reference to their partisanship scores, they evaluated partisan outcomes of the maps, and they compared the partisanship scores and partisan outcomes of the various maps. When they completed a statewide map, they submitted it to Professor Gaddie to assess the fortitude of the partisan design in the wake of various electoral outcomes.

*Whitford*, 218 F. Supp. 3d at 895. The record, however does not include direct admissions as to the specific intent behind the chosen boundaries for the 29 districts in Act 43 challenged as diluting the vote of Plaintiffs. Given that Speaker Vos is the only member of the legislative leadership that was present at both the Regional Meetings and the Individual Legislator Meetings, and given that Foltz testified that it was legislative leadership, not himself as a legislative aide, that made the ultimate decision on the boundaries of the districts, the only witness who can provide direct, first-hand evidence as to the reason for the final boundary choices that were included in the draft bill that became Act 43 is Speaker Vos.

Plaintiffs' need for legislators to testify to prove "specific intent" in a case where partisan gerrymandering was alleged was found to be sufficient to outweigh the claimed legislative privilege by state legislators in a partisan gerrymandering case brought in Maryland. *Benisek*, 241 F. Supp. 3d at 575. In *Benisek*, the court found that, even though the plaintiffs had access to many facts and data surrounding the drafting process for the redistricting plan in question, "[w]hile this evidence is valuable, it is not a substitute for the ability to depose a witness and obtain *direct* evidence of motive and intent, thus avoiding the potential ambiguity of circumstantial evidence."*Id*. at 576 (emphasis in original).

On February 13, 2019, Plaintiffs' counsel issued a subpoena under Fed. R. Civ. P. 30(b)(6) to the Wisconsin State Assembly. *See* Greenwood Decl., Ex. 7. Exhibit A to that subpoena (*see* Greenwood Decl., Ex. 7, pp. 12-13) contained the same fifteen document requests to the Wisconsin State Assembly as were issued to Speaker Robin J. Vos on February 13, 2019. *See* Greenwood Decl., Ex. 2. After receiving these requests, Attorney St. John asked, in his

13

March 5, 2019 letter, that Plaintiffs' counsel "await the Assembly's responses to those discovery requests before speculating that your discovery demands of Speaker Vos are remotely justified." *See* Greenwood Decl., Ex. 6. Plaintiffs did just that, waiting until March 15, 2019 for the Assembly to produce a response to the document requests in the 30(b)(6) subpoena. *See* Greenwood Decl., Ex. 8. However, along with a written response and objections to Plaintiffs' requests, the Assembly produced a single document (totaling two pages of responsive material). *See* Greenwood Decl., Ex. 9. Further, the Assembly's written responses to the first three requests (that ask for information about the analysis, objectives, or underlying facts used, in the development of each of the Assembly districts in "Act 43, or any other potential state assembly plan that was not adopted") explicitly state that "the Assembly will not construe [Plaintiffs' requests] to include…individual Wisconsin State Assembly Members, or Members' offices," and specify that, aside from the publicly available Assembly Journal, the Assembly "does not have responsive materials in its possession, custody or control." The Assembly's lackluster response demonstrates exactly why Plaintiffs need to depose and request documents from Speaker Vos himself.

Speaker Vos's special role in key meetings during the process of drafting Act 43 demonstrates his testimony on these subjects is not only relevant but uniquely able to provide direct evidence as to the specific intent behind the district boundaries in Act 43. Therefore, this factor weighs in favor of disclosure of the testimony sought.

### C.  The rights at interest in this case are serious.

As set out in Section II above, cases involving the violation of individuals' constitutional right to vote have been adjudged sufficiently serious to abrogate claims of legislative privilege in multiple cases. In addition, the question of the government's role in crafting challenged redistricting plans was found to be sufficiently serious in *Baldus v Brennan,* 2011 WL 6122542,

at *2, to outweigh any claim to legislative privilege over subpoenaed items. This finding is supported by numerous cases where redistricting plans were challenged and legislators were either deposed and/or required to produce documents regardless of any claim to legislative privilege. *See, e.g.*, *Benisek*, 241 F. Supp. 3d at 571 (requiring Maryland State Senate President Miller and House Speaker Busch to sit for depositions); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 301-02 (D. Md. 1992) (contemplating the depositions of Senate President Miller and Speaker Mitchell, who were later deposed, *see Marylanders for Fair Representation, Inc. v. Schaefer*, 849 F. Supp. 1022, 1039 (D. Md. 1994)); *Common Cause v. Rucho*, 318 F. Supp. 3d 777, 805 (M.D.N.C. 2018) (including deposition testimony from Senator Rucho and Representative Lewis, co-chairs of the redistricting committee, as evidence in the case); *Comm. for a Fair & Balanced Map*, 2011 WL 4837508 (requiring the President of the Senate, the Speaker of the House, and others to comply with requests for production); *Bethune-Hill*, 114 F. Supp. 3d at 323 (requiring all members of the Virginia House of Delegates to comply with a request for production); *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *4 (S.D. Tex. Apr. 3, 2014) (requiring 189 Texas legislators to produce to plaintiffs, under seal, all "documents previously withheld on the basis of legislative privilege"). And, of course, the Supreme Court felt so strongly that this case deserves a full trial on remand that it refused to direct the dismissal of this case for lack of standing because it "is not the usual case." *Whitford*, 138 S. Ct. at 1933-34.

Federal courts commonly recognize that the rights at issue in cases like this one challenging redistricting plans are serious, and consequently it is common for federal courts to find, on balance, that legislative privilege does not protect legislators from offering testimony via deposition and/or production of documents. This factor weighs in favor of disclosure of the testimony.

**D.  The Wisconsin State Assembly's role in this litigation is voluntary.**

The Wisconsin State Assembly, acting through its leader, Speaker Vos, intervened as a defendant in this case, over Plaintiffs' objection. Accordingly, the Assembly has not only a direct but also a voluntarily role in this case, and therefore "as a matter of fairness, the defendants' claim of privilege against compelled disclosure must be weakened." *Favors*, 285 F.R.D. at 211.

**E.  There is little risk that discovery from Speaker Vos will cause timidity by future government employees.**

Though courts have found that this factor generally weighs against disclosure of the testimony of legislators (because it may inhibit legislators' future communications), in cases involving redistricting, courts have found that the significance of this is "difficult to gauge." *United States v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989). One court was "not convinced that the occasional instance in which disclosure may be ordered in a civil context will add measurably to the inhibitions already attending legislative deliberations." *Id.* Another found that "[i]n the redistricting context, full public disclosure would hinder the ability of party leaders to synthesize competing interests of constituents, special interest groups and lawmakers, and draw a map that has enough support to become law." *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *9.

In the current case, however, two federal courts have already found that the motives of the lawmakers in drafting and adopting Act 43 went beyond synthesizing competing interests, and instead focused on gaining partisan advantage for the Republican Party. *See Whitford*, 218 F. Supp. 3d at 890-91 (stating that "one purpose of Act 43 was to secure the Republican Party's control of the state legislature for the decennial period;" and "a focal point of the drafters' efforts was a map that would solidify Republican control"); *Baldus v Members of Wisconsin Gov't Accountability Bd.*, 849 F. Supp. 2d 840, 851 (E.D. Wis. 2012) (finding statements by the drafters that they "were not influenced by partisan factors . . . to be almost laughable").

16

Any claim that future legislative deliberation will be chilled by the disclosure of testimony by Speaker Vos simply cannot stand because he will merely be providing additional information as to district-specific motivations to augment evidence as to statewide motivations that have already been adjudged by this Court to be relevant and necessary to the claim of partisan gerrymandering under the First and Fourteenth Amendments. This factor therefore weights in favor of disclosure of the testimony.

**IV.     Production of documents and appearance at a deposition are not sufficiently burdensome to outweigh the important needs of the case.**

The Court in *Powell* noted that, in any civil case, the district court has power to "limit discovery which is unreasonably cumulative, more easily obtainable from another source, or unduly burdensome." 247 F.3d at 527 (citing Fed. R. Civ. P. 26(b)(2)). This brief explains why the evidence from Speaker Vos would not be cumulative or obtainable from another source (in fact, it is unique and only obtainable from Speaker Vos).

As to the question of burden, Attorney St. John argued in his letter dated February 20, 2019, that "[s]ubpoenaing Speaker Vos diverts his time, energy, and attention away from legislative tasks and disrupts the important work of the Wisconsin legislature." *See* Greenwood Decl., Ex. 4. However, this so-called "burden" is one that Speaker Vos has chosen to carry by intervening as a defendant in the current case, and on numerous occasions, Speaker Vos has found the time to discuss the question of Act 43 and gerrymandering, such as his recent statements at a WisPolitics.com luncheon on February 21, 2019,[2] and quotes reported by *New York Magazine* on December 9, 2018.[3]

---

[2] @PatrickDMarley, Twitter (Feb. 21, 2019, 10:45 AM),
https://twitter.com/patrickdmarley/status/1098654911817043975?s=21.
[3] Jonathan Chait, *The More Republicans Lose, the Harder They Work to Rig the Game*, N.Y. Mag. (Dec. 9, 2018),
http://nymag.com/intelligencer/2018/12/when-republicans-lose-they-work-harder-to-rig-the-game.html.

Overall, the balance of proportionalities as to the request for production of evidence from Speaker Vos weighs heavily in Plaintiffs' favor.

## CONCLUSION

Plaintiffs seek to take discovery of Speaker Vos that is limited, necessary, and uniquely held by the witness to aid the Court in its determination as to the specific intent behind the drawing of each of the 29 challenged Assembly districts in Act 43. This Court should either issue Plaintiffs' proposed subpoena, or, in the alternative, order Attorney St. John to accept service of Plaintiffs' proposed subpoena on behalf of Speaker Vos, and order Speaker Vos to appear at a deposition and produce documents in accordance with it.

Dated: March 19, 2019                    Respectfully submitted,

                                         /s/ Ruth M. Greenwood
                                         Ruth M. Greenwood
                                         CAMPAIGN LEGAL CENTER
                                         73 W. Monroe St., Ste. 302
                                         Chicago, IL 60603
                                         (312) 561-5508
                                         rgreenwood@campaignlegalcenter.org

                                         *One of the attorneys for the Plaintiffs.*