IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM WHITFORD, GRAHAM ADSIT,
ROGER ANCLAM, WARREN BRAUN,
HANS BREITENMOSER, JUDITH BREY,
BRENT BRIGSON, EMILY BUNTING,
SANDRA CARLSON-KAYE, GUY COSTELLO,
TIMOTHY B. DALEY, MARGARET LESLIE
DEMUTH, DANIEL DIETERICH, MARY LYNNE
DONOHUE, LEAH DUDLEY, JENNIFER ESTRADA,
BARBARA FLOM, HELEN HARRIS,
GAIL HOHENSTEIN, WAYNE JENSEN,
WENDY SUE JOHNSON, MICHAEL LECKER,
ELIZABETH LENTINI, NORAH MCCUE,
JANET MITCHELL, DEBORAH PATEL,
JANE PEDERSEN, NANCY PETULLA,
ROBERT PFUNDHELLER, SARA RAMAKER,
ROSALIE SCHNICK, ALLISON SEATON,
JAMES SEATON, ANN E. STEVNING-ROE,         OPINION and ORDER
LINEA SUNDSTROM, MICHAEL SWITZENBAUM,
JEROME WALLACE, DONALD WINTER,                15-cv-421-jdp
EDWARD WOHL, and ANN WOLFE,

                Plaintiffs,

   v.

BEVERLY R. GILL, JULIE M. GLANCEY,
ANN S. JACOBS, JODI JENSEN, DEAN KNUDSON,
and MARK L. THOMSEN,

                Defendants,

   and

THE WISCONSIN STATE ASSEMBLY,

                Intervenor-Defendant.

---

Plaintiffs have filed a motion to compel discovery against Robin Vos, the Wisconsin State Assembly Speaker. Dkt. 257. Plaintiffs contend that Vos has critical information related to their claim that the 2011 Assembly redistricting plan is an unconstitutional partisan

gerrymander, so they ask the court to compel Vos to sit for a deposition and turn over 15 categories of documents. In response, Vos says that any discovery against him is barred by legislative privilege or is otherwise outside the scope of Federal Rule of Civil Procedure 26. Dkt. 265. The Assembly adopted Vos's position as its own, Dkt. 266; the remaining defendants took no position on the motion, Dkt. 263.

For the reasons explained below, we conclude that plaintiffs are entitled to depose Vos and to receive responses to some but not all of their requests for production. We acknowledge that a sitting legislator is not subject to civil process in any but the most exceptional circumstances. But this is an exceptional case that raises important federal questions about the constitutionality of Wisconsin's plan for electing members of the Assembly. Vos was a key figure in enacting that plan and he was involved at nearly every stage of the process. Probably no one has a better understanding of the challenged plan than he does. Under these circumstances, the qualified legislative privilege to which Vos is entitled must yield to the important federal interests implicated by plaintiffs' claims.

ANALYSIS

The parties argue the following issues in their briefs: (1) whether Vos waived any legislative privilege he had; (2) if not, whether the privilege is absolute or qualified under the facts of this case; (3) if it is qualified, whether the privilege, other federal common law, or Rule 26 bars the discovery at issue. We will consider each issue in turn.

A. Waiver

Plaintiffs assert that Vos has waived any claim to legislative privilege because the Wisconsin Assembly intervened in this case. But the Assembly's intervention in the litigation

did not waive the legislative privilege held by its individual members. That is because the privilege is a "personal one" and may only be "waived or asserted by each individual legislator." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992); *see also Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012) ("[A] legislator cannot assert or waive the privilege on behalf of another legislator."). Vos did not intervene in this case and thus did not waive the privilege.

**B. Scope of the privilege**

In arguing that legislative privilege bars plaintiffs' discovery requests, Vos relies on a line of cases that begins with *Tenney v. Brandhove*, 341 U.S. 367 (1951). In that case, the Supreme Court concluded that members of a California state senate committee were immune under federal common law principles from civil liability for allegedly violating the plaintiff's First Amendment rights by calling him before the committee. *Id.* at 376–77. *See also United States v. Gillock*, 445 U.S. 360, 372 n.10 (1980) (noting that *Tenney* "was grounded on its interpretation of federal common law"). The Court's rationale was that granting immunity was necessary to allow legislators to discharge their public duties without concern of adverse consequences outside the ballot box. *Tenney*, 341 U.S. at 373. Since *Tenney*, federal courts have uniformly held that state legislators are generally immune from civil lawsuits. *E.g., Reeder v. Madigan*, 780 F.3d 799, 805 (7th Cir. 2015); *Bagley v. Blagojevich*, 646 F.3d 378, 396–97 (7th Cir. 2011).

*Tenney* was not about a privilege against testifying or complying with discovery requests, which is less burdensome and intrusive than being a defendant in a lawsuit. But lower courts have consistently construed *Tenney* and its progeny as more generally restricting the use of civil process against state legislators, including depositions and other discovery. *E.g., In re Hubbard*,

803 F.3d 1298, 1307–08 (11th Cir. 2015); *Bagley*, 646 F.3d at 396–97; *EEOC v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011).

That is not the end of the matter, however, because the Supreme Court has also held that there are exceptions to state legislative immunity. Specifically, immunity must give way "where important federal interests are at stake." *United States v. Gillock*, 445 U.S. 360, 373 (1980). The interest at stake in *Gillock* was a federal prosecution for bribery. The Court distinguished *Tenney* on the ground that *Tenney* "was a civil action brought by a private plaintiff to vindicate private rights." *Id.* at 372.

*Gillock* is the only case cited by the parties in which the Supreme Court concluded that a state legislator was not entitled to immunity for legislative acts. But many courts, including two in the Seventh Circuit, have concluded that gerrymandering claims raise sufficiently important federal interests to overcome legislative privilege, reasoning that such claims involve public rights and that the ballot box may not provide adequate protection of those rights. *E.g.*, *Benisek v. Lamone*, 241 F. Supp. 3d 566, 572–74 (D. Md. 2017); *Lee v. Virginia State Bd. of Elections*, No. 15-cv-357 (HEH-RCY), 2015 WL 9461505, at *5 (E.D. Va. Dec. 23, 2015); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 333 (E.D. Va. 2015); *Favors v. Cuomo*, 285 F.R.D. 187, 213–14 (E.D.N.Y. 2012); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508 (N.D. Ill. 2011); *Baldus v. Brennan*, Nos. 11–cv–562, 11–cv–1011, 2011 WL 6122542 (E.D. Wis. 2011); *United States v. Irvin*, 127 F.R.D. 169, 170, 173–74 (C.D. Cal. 1989). These cases are consistent with *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977), in which the Supreme Court stated that "extraordinary circumstances" could justify requiring a legislator to testify at trial.

4

The only contrary authority that Vos cites is *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018), in which the court relied on legislative privilege to deny a motion to compel depositions of city officials in the context of a racial gerrymandering claim. But the court in *Lee* did not hold that a gerrymandering claim can never overcome legislative privilege, only that "the factual record in [that] case [fell] short of justifying the substantial intrusion into the legislative process." 908 F.3d at 1188 (internal quotations omitted). In any event, the persuasive force of *Lee* is limited because the court did not acknowledge *Gillock*'s statement that an important federal interest can overcome legislative immunity. And the court did not acknowledge any of the cases from other courts discussing the unique nature of gerrymandering claims.

We are persuaded by the reasoning of the many courts concluding that there is a qualified rather than absolute legislative privilege from complying with discovery requests in the context of a claim regarding unconstitutional gerrymandering. An allegation that a legislative act violated a single individual's rights cannot be compared with a claim that the entire make up of a state legislative body is the result of an unconstitutional redistricting process. The alleged constitutional violations in this case implicate important structural concerns about the legitimacy of the Wisconsin government in a way that impedes plaintiffs' ability to obtain redress through the political process. Under these circumstances, we conclude that an absolute privilege would fail to give due respect to the important federal interest of ensuring a fair and equal election process that complies with the First and Fourteenth Amendments. *See Trammel v. United States*, 445 U.S. 40, 50 (1980) (privileges should apply "only to the very limited extent that . . . a public good transcend[s] the normally predominant principle of utilizing all rational means for ascertaining truth" (internal quotations omitted)).

The next step is to determine the appropriate test for evaluating whether the qualified privilege should apply. The other courts that have applied a qualified privilege to gerrymandering claims have balanced five factors: (1) the relevance of the evidence sought; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the role of the State, as opposed to individual legislators, in the litigation; and (5) the extent to which the discovery would impede legislative action. *E.g.*, *Benisek*, 241 F. Supp. 3d at 575.

We will take this approach, though not all of the factors require extended discussion. As for the seriousness of the litigation, we have already concluded that plaintiffs' claim implicates an important federal interest. As for the role of the state versus the individual legislator, that factor relates to whether the lawsuit potentially subjects the legislator to personal liability. *Bethune-Hill*, 114 F. Supp. 3d at 334–35. In this case, as in any gerrymandering case, the answer is no. As for the potential to impede legislative action, any intrusion into the legislative process has that potential; that is the reason for the privilege in the first place. We have already concluded that gerrymandering claims raise sufficiently important federal interests to override that concern in some circumstances.

This leaves two key questions: (1) how important to plaintiffs' claims is the requested discovery? and (2) do plaintiffs have alternative means for obtaining the information? We will now turn to these questions as well as the more general question whether all of the discovery requests at issue fall within the discovery limits of Rule 26.[1]

---

[1] In addition to asserting legislative privilege, Vos invokes the principle that a public official "should not be taken away from his work to spend hours or days answering lawyers' questions unless there is a real need." *Olivieri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997). Because legislative privilege implicates the same concern, we need not discuss the principle in *Oliveri* separately.

**C. Particular discovery requests**

   **1. Deposition testimony**

Plaintiffs seek to depose Vos on the following topics:

> (1) testimony relating to how the Legislature reached its decision on the boundaries for each district in the 2011 redistricting maps (Act 43), including its motives, objective facts it relied on, and the involvement of others in the process, including the Redistricting Majority Project (REDMAP), the Republican National Committee, or other national Republican Party entities; and
>
> (2) testimony as to the predicted and actual associational effects of Act 43 on the Democratic Party, Democratic voters, the Republican Party, and Republican voters.

Dkt. 258, at 7.

As both sides acknowledge, the proposed deposition relates primarily to the intent of the legislature in enacting the 2011 plan. Although the Supreme Court has yet to articulate a standard for proving partisan gerrymandering, other types of gerrymandering claims recognized by the Court include intent as an element. *See Cooper v. Harris,* 137 S. Ct. 1455, 1463 (2017) ("A State may not use race as the predominant factor in drawing district lines unless it has a compelling reason."). Intent has also been an element in the tests for partisan gerrymandering applied by district courts—including this one—under both the First Amendment and the Equal Protection Clause. *E.g.*, *League of Women Voters of Michigan v. Benson*, No. 17-cv-14148, 2019 WL 1856625, at *27–28 (E.D. Mich. Apr. 25, 2019); *Ohio A. Philip Randolph Inst. v. Householder*, No. 18-cv-357, 2019 WL 652980, at *4–6 (S.D. Ohio Feb. 15, 2019); *Common Cause v. Rucho*, 318 F. Supp. 3d 777, 861, 927 (M.D.N.C. 2018); *Benisek v. Lamone*, 348 F. Supp. 3d 493, 522 (D. Md. 2018); *Whitford v. Gill*, 218 F. Supp. 3d 837, 884 (W.D. Wis. 2016). Vos does not deny that plaintiffs will have to prove the Assembly's intent to prevail on

7

their claims. So the type of evidence that plaintiffs seek from Vos is not only relevant but also necessary.

Plaintiffs have narrowly tailored their request to include only Vos rather than a larger group of legislators. Plaintiffs chose Vos because of his deep involvement in the redistricting process. Specifically, Vos was the only Representative who participated in two sets of key meetings. In the first set, Vos and other members of the legislative leadership met to discuss the boundaries of specific districts. Dkt. 258, at 16. In the second set, Vos met one-on-one with each Republican Representative about that Representative's district. *Id.* So Vos has a unique perspective and potential insight into the intent behind the redistricting plan.

Vos points out that plaintiffs have already obtained numerous documents and electronic discovery related to the redistricting process, as well as the testimony of legislative aide Adam Foltz, who was present with Vos at many of the meetings about the redistricting plan. In a supplemental brief, the Assembly notes that plaintiffs have served a subpoena on Foltz that overlaps substantially with the subpoena served on Vos. *See* Dkt. 272.

We are not persuaded that the availability of other documents or Foltz's testimony renders Vos's testimony unnecessary. As for the documents already produced, it is undisputed that there are significant gaps in the records because much electronic discovery was lost as the result of damage to one hard drive that contained information related to the redistricting process and the destruction of others. Dkt. 268, at 16. And Vos does not point to any documents that detail the discussions among the legislative leadership or between Vos and the individual Representatives.

As for Foltz's testimony, we do not believe that it is properly viewed as an adequate substitute for testimony from Vos. For one thing, we have already stated that we have "less

confidence" in Foltz's testimony than the testimony of some other witnesses and even that some of his testimony was "unworthy of credence." *Whitford*, 218 F. Supp. 3d at 890 n.177. And even assuming that everything Foltz said was true, the perspective of a legislative aide cannot be compared to that of one of the primary architects of the redistricting plan. Foltz simply does not have the same insight into legislative intent that Vos does.

So we will grant the motion to compel Vos's deposition. But we will also follow the approach in *Benisek* by reserving a final ruling on the admissibility of deposition testimony. If plaintiffs attempt to rely on any portion of the testimony later in the proceedings, Vos may seek a ruling on its admissibility or a protective order at that time. *See Benisek*, 241 F. Supp. 3d at 577 ("[E]ach legislator witness will be able, before his or her testimony becomes public, to file a motion for a protective order, should the parties not be able to agree on one." (footnotes omitted)).

**2. Requests for production**

In addition to Vos's deposition, plaintiffs submitted requests for production of 15 categories of documents. *See* Dkt. 259-1. Requests for production nos. 1 through 3 and 15 appear to overlap substantially with the topics noticed for deposition.[2] Because the parties do not raise any issues unique to these requests, we will direct Vos to respond.

---

[2] Requests for production nos. 1–3 seek:

> 1. All documents, including but not limited to email, concerning any analyses, data, plans, procedures, memos and/or reports used by state legislative staff, state legislators, and/or any consultants or experts in the planning, development, negotiation, drawing, revision, or redrawing of the maps codified in 2011 Wisconsin Act 43 or any other potential state assembly plan that was not adopted.

Requests nos. 4 and 5 relate to the Assembly's retention of a law firm before the original appeal of this case.[3] Because plaintiffs do not explain how that information is relevant to any

---

> 2. All documents, including but not limited to email, concerning the objectives and/or motives relied on by—or available to—state lawmakers, their staff and/or any consultants or experts in the planning, development, negotiation, drawing, revision, or redrawing of the maps codified in 2011 Wisconsin Act 43 or any other potential state assembly plan that was not adopted.
>
> 3. All documents, including but not limited to email, concerning the objective facts that legislative staff and/or any experts or consultants references, used or relied upon—or had available to them—in the planning, development negotiation, drawing, revision, or redrawing of the maps codified in 2011 Wisconsin Act 43 or any other potential state assembly plan that was not adopted.

Request for production no. 15 seeks:

> 15. Any and all documents reflecting or relating or referring to communications the RPW has had with any current or former Republican Wisconsin State Assembly member or candidate about the impact of Act 43 . . . on Assembly elections across the State of Wisconsin as a whole or in any one or more particular Assembly districts from 2010 to the present.

[3] Requests nos. 4 and 5 seek:

> 4. Any and all requests that you, your office, or anyone employed by you or your office received to provide to the requesting person or to release to the public a copy of any engagement letter, contract, agreement, or other document reflecting the Wisconsin State Assembly's retention or engagement of Bartlit Beck LLP to serve as its legal counsel in *Whitford v. Gill*, case no. 15-cv-421-jdp, pending in the U.S. District Court for the Western District of Wisconsin.
>
> 5. Copies of any and all documents that you, your office, or anyone employed by you or your office provided to the requesting person or released to the public in response to any request identified in Paragraph 4, above.

of the issues that plaintiffs must prove in this case (or could lead to the discovery of relevant information), we will deny the motion to compel as to those requests.

Requests nos. 6 through 9 relate to information that Vos received from outside organizations such as the Republican National Committee.[4] Vos does not deny the relevance of these materials, but he contends that plaintiffs should be required to seek the information from the third parties. But that would be true only if these materials were covered by legislative privilege. Because these documents came from third parties, they are not protected. *See Bethune-*

---

[4] Requests for production nos. 6–9 seek:

> 6. Copies of any and all documents prepared by or transmitted by the Republican National Committee, that relate or refer to legislative redistricting, including but not limited to the document attached hereto as Exhibit 1.
>
> 7. Copies of any and all communications, including email, that relate or refer to legislative redistricting, reflecting or referring to any of the following people or email addresses:
>
> a. Tom Hofeller, thofeller@rnchq.org
>
> b. Dale Oldham, doldham@rnchq.org
>
> c. Mike Wild, mwild@rnchq.org
>
> d. John Phillipe, jphillippe@rnchq.org
>
> e. Leslie Rutledge, lrutledge@rnchq.org
>
> 8. Any and all materials reflecting or relating or referring to the April 2010 Republican National Committee's GOP Redistricting Conference, including any and all notes, summaries, minutes, agendas, papers, documents, data, computer files, CDs, training materials, or any other written or electronic material prepared for, distributed at, created at, or otherwise related to that conference.
>
> 9. Any and all documents reflecting or relating or referring to the Redistricting Majority Project, commonly referred to as "REDMAP."

*Hill*, 114 F. Supp. 3d at 343 ("[T]he House must produce any documents or communications shared with, or received from, any individual or organization outside the employ of the legislature."); *Baldus*, 2011 WL 6122542, at *2 ("The Legislature has waived its legislative privilege to the extent that it relied on such outside experts for consulting services."). So the court will direct Vos to respond to these requests as well.

The last group of requests is extremely broad. Plaintiffs seek information from 2002 onward related to a wide range of activities of the Republican party.[5] Because plaintiffs do not

---

[5] Requests nos. 10–14 seek:

> 10. Any and all documents reflecting or relating or referring to meetings, communications, or conversations from 2002 to the present regarding or relating to recruiting Republican candidates for Wisconsin State Assembly.
>
> 11. Any and all documents reflecting or relating or referring to communications made by the RPW that solicited campaign contributions to the RPW or to any individual Republican candidate for the Wisconsin State Assembly from 2002 to the present. The categories of communications as used in this request includes but is not limited to emails, mailings, phone solicitations, person-to-person solicitations, and fundraising events.
>
> 12. Any and all documents reflecting or relating or referring to volunteer activities in support of Republican campaigns for the Wisconsin State Assembly that were coordinated by, arranged by, carried out by, or funded by the RPW from 2002 to the present.
>
> 13. Any and all documents reflecting or relating or referring to voter registration activities that were coordinated, arranged, carried out, or funded by the RPW or Wisconsin Republican Assembly Campaign Committee ("WRACC") from 2002 to the present.
>
> 14. Any and all documents reflecting or relating or referring to meetings, communications, or conversations from 2002 to the present regarding or relating to advocating for or implementing legislative policies preferred by the RPW or the Republican Assembly Caucus.

even attempt to show that that these requests are "proportional to the needs of the case" or that the benefit of providing the information is not outweighed by the burden or expense of the proposed discovery, *see* Fed. R. Civ. P. 26(b)(1), we will not require Vos to produce the responsive material at this time.

ORDER

IT IS ORDERED that plaintiffs' motion to compel discovery, Dkt. 257, is GRANTED as to the deposition of Robin Vos and requests for production nos. 1–3, 6–9, and 15. The motion is otherwise DENIED.

Entered May 3, 2019.

BY THE COURT:

/s/_____
KENNETH F. RIPPLE
Circuit Judge


/s/_____
JAMES D. PETERSON
District Judge

GRIESBACH, *District Judge,* dissenting. I respectfully dissent from the majority's conclusion that the legislative privilege does not apply in this case. In my view, intent is no longer an issue in the case, and whatever relevance Speaker Vos' testimony may have does not warrant invasion of the legislative privilege.

"The legislative privilege is important. It has deep roots in federal common law." *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015) (citing *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)). Legislative privilege is a corollary to legislative immunity, which provides a legislator with immunity from civil liability for their actions. *See Benisek v. Lamone*, 263 F. Supp. 3d 551, 554 (D. Md. 2017) (citation omitted). The doctrine of legislative immunity is premised on the notion that "a private civil action . . . creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503 (1975). It also recognizes that the threat of civil liability strips legislators of the courage necessary to legislate for the public good. *See Tenney*, 341 U.S. at 377. "The doctrine is a bulwark in upholding the separation of powers" and insulates legislators "from judicial scrutiny into their deliberative processes." *Schaefer*, 144 F.R.D. at 304; *see also Supreme Court of Va. v. Consumers Union of the United States*, 446 U.S. 719, 731–32 (1980) (noting the purpose of legislative immunity is to ensure that "the legislative function may be performed independently without fear of outside interference"); *All. for Global Justice v. District of Columbia*, 437 F. Supp. 2d 32, 35 (D.D.C. 2006) ("The primary purposes of . . . legislative immunity is to insure the independent performance of the legislative function and to preserve the separation of powers." (citation omitted)).

Legislative privilege exists to "safeguard . . . legislative immunity and to further encourage the republican values it promotes." *EEOC v. Wash. Suburban Sanitary Comm'n*,

631 F.3d 174, 181 (4th Cir. 2011). The privilege "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972). Like legislative immunity, the legislative privilege ensures that "lawmakers are allowed to 'focus on their public duties'" rather than on defending lawsuits. *In re Hubbard*, 803 F.3d at 1310 (quoting *Wash. Suburban*, 631 F.3d at 181). More importantly, however, the purpose of the legislative privilege is to minimize politics masquerading as litigation by shielding legislators from "political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." *Wash. Suburban*, 631 F.3d at 181. The legislative privilege, which functions as a testimonial and evidentiary privilege, is therefore not to be cast aside lightly. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977).

In actions brought in federal courts, the constitutional and policy reasons underlying the legislative privilege have been found less compelling for state legislators than for federal legislators. *See United States v. Gillock*, 445 U.S. 360, 370–71 (1980) (noting that "federal interference in the state legislative process is not on the same constitutional footing with the interference of one branch of the Federal Government in the affairs of a coequal branch"). But principles of comity still warrant recognition of such a privilege and "command careful consideration." *Id.* at 373. In *Gillock*, the Court held that "where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *Id. Gillock*, however, involved a federal prosecution of a state legislator for bribery. The issue before the Court there was whether a legislative privilege barred the introduction of evidence of the legislative acts of a state legislator charged with taking bribes or otherwise obtaining money unlawfully through the exploitation of his official position. *Id.* at 362.

2

Speaker Vos, in contrast, is not charged with taking bribes or engaging in criminal conduct for his own personal purposes. Instead, he and the other legislative members of his party are alleged to have used the legislative process to enact a redistricting plan intended to increase the chances of their party obtaining a majority in the assembly, in other words, partisan gerrymandering, a practice that is older than the Republic. Moreover, at the time Speaker Vos is alleged to have so acted, and even at this late date, the Court has yet to hold such intent unlawful. Indeed, the Court has consistently recognized that partisan intent is part and parcel of a system that entrusts redistricting to politicians. *See, e.g.*, *Vieth v. Jubelirer*, 541 U.S. 267, 285 (2004) (plurality opinion) ("The Constitution clearly contemplates districting by political entities, see Article I, § 4, and unsurprisingly that turns out to be root-and-branch a matter of politics."); *Miller v. Johnson*, 515 U.S. 900, 914 (1995) ("[R]edistricting in most cases will implicate a political calculus in which various interests compete for recognition . . . ."). This is a far cry from the conduct at issue in *Gillock*.

The majority notes that "many courts, including two in the Seventh Circuit, have concluded that gerrymandering claims raise sufficiently important federal interests to overcome legislative privilege, reasoning that such claims involve public rights and that the ballot box may not provide adequate protection of those rights." Majority opinion at 3–4 (collecting cases). But this just begs the question of whether such claims are justiciable in the first place. Absent a judicially manageable standard, which the Supreme Court has so far been unable to discern, no judicial remedy is available and we are simply spinning our wheels.

Even if I were to accept the majority's view that the importance of the issue, by itself, is sufficient to overcome the legislative privilege, I would nevertheless hold that

3

under the circumstances of this case, Speaker Vos' testimony is not required. This is because partisan intent has already been established. This court found that such intent existed in the first trial. After a detailed eight-page discussion of the evidence bearing on the issue of intent, the majority concluded: "These facts, in tandem with the overwhelming number of reports and memoranda addressing the partisan outcomes of the various maps, lead us to conclude that, although Act 43 complied with traditional redistricting principles, it nevertheless had as one of its objectives entrenching the Republicans' control of the Assembly." *Whitford v. Gill*, 218 F. Supp. 3d 837, 898 (W.D. Wis. 2016). The majority then went on to find: "It is clear that the drafters got what they intended to get. There is no question that Act 43 was designed to make it more difficult for Democrats, compared to Republicans, to translate their votes into seats." *Id.* Not even the dissent disputed this finding, and the Supreme Court did not disturb it.

Instead, the Court vacated this court's judgment upon a finding that standing had not been established and remanded the case to allow voters "an opportunity to prove concrete and particularized injuries using evidence—unlike the bulk of the evidence presented thus far—that would tend to demonstrate a burden on their individual votes." *Gill v. Whitford*, 138 S. Ct. 1932, 1934 (2018). The Court expressly stated whether plaintiffs have established an injury in fact "turns on effect, not intent, and requires a showing of a burden on the plaintiffs' votes that is 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* at 1932 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Deposing Vos about the legislature's intent in enacting the 2011 plan is neither necessary nor relevant to plaintiffs' burden and would be an intrusion into the legislative process for no real reason. Given these circumstances, plaintiffs have not made the showing necessary to overcome the legislative privilege.

Because the legislative privilege applies, I would deny plaintiffs' motion to compel. I therefore dissent.

/s/_____
WILLIAM C. GRIESBACH
District Judge