UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

WILLIAM WHITFORD, et al.

    Plaintiffs,

v.

BEVERLY R. GILL, et al.,

    Defendants,

and

THE WISCONSIN STATE ASSEMBLY,

    Intervenor-Defendant.

Case No. 3:15-CV-00421-jdp

# BRIEF IN SUPPORT OF
# THE WISCONSIN STATE ASSEMBLY'S BILL OF COSTS

On July 2, 2019, this Court dismissed Plaintiffs' complaint. Op. & Order at 2, ECF 318. As part of that order, and consistent with circuit precedent and the Federal Rules, the Court ruled "[s]tatutory costs will be awarded to the defendants as the prevailing party…." *Id*; *see* FED. R. CIV. P. 54(d)(1). Plaintiffs now say that costs are not "just" and ought not be awarded. *See* Pls.' Mot. to Defer Question of Entitlement to Costs ("Mot.") at 1, ECF 320. That argument—based on outdated, out-of-circuit decisions—flouts the Supreme Court's decision in *Marx v. General Revenue Corp.*, 568 U.S. 371 (2013), and binding Seventh Circuit precedent.

For the foregoing reasons, the Assembly is a prevailing party entitled to recover its costs. Consistent with Rule 54(d)(1) and 28 U.S.C. §§ 1919, 1920, the Assembly respectfully requests the costs enumerated in its contemporaneously filed

bill of costs and verified in the contemporaneously filed declaration, which attaches supporting invoices and receipts. *See* Meehan Decl.; Exs. A, D-H, K.

## AVAILABILITY OF COSTS

Time and again, the Wisconsin State Assembly argued Plaintiffs' partisan gerrymandering claims were not justiciable. *See* Assembly's Br. in Supp. of Mot. to Intervene at 17, ECF 210; *see generally* Assembly's Br. in Supp. of Mot. to Dismiss, ECF 225. After the Supreme Court scheduled two partisan gerrymandering cases for argument to decide that very question, the Assembly asked that costly litigation be deferred. *See* Assembly's Br. in Supp. of Mot. to Stay at 2-4, ECF 231; *see also* Assembly's Mot. for Fees at 3-7, ECF 326.

Tens of thousands of dollars in costs later, the Supreme Court confirmed that the Assembly was right all along. Partisan gerrymandering claims are nonjusticiable: "the Constitution supplies no objective measure for assessing whether a districting map treats a political party fairly." *Rucho v. Common Cause*, No. 18-422, slip op. at 20 (June 27, 2019). In accordance with *Rucho*, this Court ruled "[t]here is no doubt that this case cannot succeed in federal court" and dismissed Plaintiffs' complaint. Op. & Order at 2, ECF 318.

Plaintiffs now protest that the Assembly cannot recover its costs, ordinarily awarded as a matter of course. *See* FED. R. CIV. P. 54(d)(1). Because this Court dismissed Plaintiffs' nonjusticiable claims for lack of jurisdiction, Plaintiffs believe that Rule 54(d)(1)'s cost provision is displaced by 28 U.S.C. § 1919 and that an award of costs is unjust. *See* Mot. at 2-4. Plaintiffs are wrong. Rule 54(d)(1)'s

2

"venerable presumption" that prevailing parties are entitled to costs is not displaced merely because Plaintiffs' nonjusticiable claims were dismissed for lack of jurisdiction. *See Marx*, 568 U.S. at 377. Even if it were (contrary to *Marx*), an award of costs is "just" under section 1919.

I.   **Section 1919 Does Not Displace Rule 54(d)(1).**

Federal Rule of Civil Procedure 54(d)(1) states that "costs … should be allowed to the prevailing party" unless "a federal statute, these rules, or a court order provides otherwise." As described by the Supreme Court, Rule 54(d)(1) "codifies a venerable presumption that prevailing parties are entitled to costs." *Marx*, 568 U.S. at 377. The question here is whether another federal law—stating a court "may order the payment of just costs" even for cases dismissed for lack of jurisdiction, 28 U.S.C. § 1919—"provides otherwise." It does not.

In *Marx*, the Supreme Court considered when a costs statute "provides otherwise" under Rule 54(d)(1). The Court held that "a statute must be *contrary to* Rule 54(d)(1)" to displace its presumption that prevailing parties are entitled to costs. *Marx*, 568 U.S. at 379 (emphasis added). For example, a statute prohibiting certain plaintiffs in patent infringement suits from recovering costs unless they file a disclaimer before filing suit imposes a condition that is contrary to Rule 54(d)(1). *See id.* at 378 (discussing 28 U.S.C. § 1928). Similarly, a federal law stating that a judicial officer "shall not be held liable for any costs … *unless* such action was clearly in excess of such officer's jurisdiction" displaces Rule 54(d)(1). *See id.* at 384 (discussing 42 U.S.C. § 1988(b)). But the Court rejected the argument that any federal statute specifically providing for costs displaces Rule 54(d)(1). *See id.* at 378.

3

Directly relevant here, *Marx* concludes that a hypothetical statute "providing that 'the court *may* award costs to the prevailing party,' for example, is not contrary to the Rule because it does not limit a court's discretion." *Id.* (emphasis added).

Plaintiffs' arguments that 28 U.S.C. § 1919 displaces Rule 54(d)(1) cannot be reconciled with *Marx*. In 1875, Congress statutorily superseded the common-law rule prohibiting courts from entering judgment against a losing party, even for costs, in suits dismissed for lack of jurisdiction. *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 386-87 (1884); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 926-27 (7th Cir. 2000). As codified today, section 1919 provides, "Whenever any action or suit is dismissed…for want of jurisdiction, such court may order the payment of just costs." Rather than contradict courts' discretion to award costs, section 1919 confirms that this discretion extends to cases dismissed for lack of jurisdiction. In *Mansfield*, for example, the Court awarded costs and noted "the long established practice and universally recognized rule of the common law" that "the prevailing party is entitled to recover a judgment for costs"—a universally recognized rule now extended to cases where parties "ineffectually invoked the jurisdiction of the circuit court." *Mansfield*, 111 U.S. at 386-87. Here, as in *Mansfield*, that presumption applies with full force.

Plaintiffs bury *Marx* in a footnote. *See* Mot. at 3 n.2. According to Plaintiffs, section 1919 is contrary to Rule 54(d)(1) because section 1919 is (1) "permissive" and (2) "permits an award of costs to *either party*, depending upon whether the circumstances of such an award would be 'just.'" *Id.* Tellingly, Plaintiffs cite no case

4

to support either proposition. *Marx* rejects Plaintiffs' first point. Section 1919's permissive language that a court "may" award costs is no different than *Marx*'s hypothetical statute "providing that 'the court may award costs to the prevailing party.'" *Marx*, 568 U.S. at 378. Neither displaces Rule 54(d)(1) because neither limits a court's discretion. *Id.* As for Plaintiffs' second point, section 1919 is silent about whether a court may tax a losing party's costs against the prevailing party, nor does it appear that it would be "just" for a court to do so. *Cf. Mansfield*, 111 U.S. at 388-89 (deciding plaintiff who improperly invoked federal court's jurisdiction was "the losing and not the prevailing party" and was required to pay costs). Where "a statute is silent," Plaintiffs cannot contort its text to "'displace the background rule that a court has discretion to award costs'" to prevailing parties. *Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 383 (7th Cir. 2018) (quoting *Marx*, 568 U.S. at 380).

Statutes worded differently than Rule 54(d)(1) are not necessarily "contrary to" Rule 54(d)(1). *Marx*, for example, held that federal law permitting a court to award fees and costs on a finding that an action had been brought in "bad faith" did not displace Rule 54(d)(1). *Marx*, 568 U.S. at 380-87. So too here—section 1919's "just costs" language is not "literally contrary" to Rule 54(d)(1). *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 915 (7th Cir. 2013). Even before *Marx*, binding Seventh Circuit precedent awarded costs listed in 28 U.S.C. § 1920—the very categories of costs the Assembly requests here—as "just costs" to the prevailing party without any additional requirements. *See Mashak v. Hacker*, 303 F.2d 526, 526-27 (7th Cir. 1962) (stating section 1919 empowers courts "to tax costs even

5

though it has no jurisdiction to entertain the action" and then relying on section 1920 to tax deposition costs); *see also Citizens for a Better Env't*, 230 F.3d at 930.[1] Section 1919 leaves an award of costs to the district court's discretion and thus leaves fully intact Rule 54(d)(1)'s presumption that prevailing parties recover costs.

None of Plaintiffs' cited cases compels a different conclusion. Every case predates *Marx*. None binds this Court. Since *Marx*, the binding rule in the Seventh Circuit is that a statute displaces Rule 54(d)(1) only if it is "literally contrary" to the rule. *Leimkuehler*, 713 F.3d at 915 (reconsidering approach to costs statute in light of *Marx*); *see also Armstrong*, 880 F.3d at 383 (stating Rule 54(d)(1)'s presumption is "difficult to overcome"). Applied here, section 1919 is not "literally contrary" to Rule 54(d)(1). And the Assembly is entitled to recover its costs as a prevailing party.

---

[1] In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court interpreted 28 U.S.C. § 1447(c)'s similar statutory language, providing a court "may require payment of just costs and any actual expenses, including attorney fees," when remanding a case to state court. The Court reasoned "section 1447(c) authorizes courts to award costs and fees, but only when such an award is just." *Id.* at 138. The particular question in *Martin* was "how to define that standard" as applied to attorneys' fees (not costs). *Id.* The Court decided that "an award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales." *Id.* at 139. But the Court went on to explain that its decisions have "often limited courts' discretion to award fees despite the absence of express legislative restrictions" and instructed lower courts that they may award fees under section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 139, 141. That judicially imposed limitation on courts' discretion to award fees is consistent with the background presumption that fees are not awarded as a matter of course and thus "stand on a different footing" than costs. *Mother & Father v. Cassidy*, 338 F.3d 704, 710 (7th Cir. 2003); *see Marx*, 568 U.S. at 381-82.

## II. Even If Section 1919 Displaced Rule 54(d)(1), An Award of Costs Would Be "Just."

Alternatively, an award of costs is "just" under section 1919. This is not the ordinary case in which a plaintiff's complaint is dismissed for lack of diversity jurisdiction or the absence of a federal question. In such a case, a plaintiff might refile the same claims in a state court, and any question about an award of costs can be deferred or decided there. *See, e.g., Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1342-43 (10th Cir. 1998).

But here, there is nothing left of Plaintiffs' federal constitutional claims. Refiling in state court will not avoid *Rucho*'s repeated statements that the federal Constitution contains no remedy for partisan gerrymandering claims: "There are no legal standards discernible in the Constitution for making such judgments" about political "fairness." *Rucho*, slip op. at 19; *see also id.* at 20 ("the Constitution supplies no objective measure for assessing whether a districting map treats a political party fairly"). As for Plaintiffs' dogged pursuit of evidence of partisan intent, the Court ruled that intending to "secur[e] partisan advantage…does not become constitutionally impermissible" merely because "that permissible intent 'predominates.'" *Id.* at 23. As for any First Amendment claim, the Court put those to rest too: "[T]here are no restrictions on speech, association, or any other First Amendment activities in the districting plans at issue. The plaintiffs are free to engage in those activities no matter what the effect of a plan may be on their district." *Id.* at 26. Perhaps Plaintiffs are planning to raise other claims in state court, *see* Mot. at 6, but *Rucho* closes the door to relitigation of the federal

7

constitutional claims asserted here. In any event, even Plaintiffs' cited authority recognizes that a federal court need not defer an award of costs pending future state-court litigation. *See Otay Land Co. v. United Enters. Ltd.*, 672 F.3d 1152, 1159 (9th Cir. 2012) (stating such a rule "inappropriately narrow[s] the district court's discretion"). That is doubly true here, where refiling the dismissed federal constitutional claims in a state court would be frivolous in light of *Rucho*.

Plaintiffs further argue that costs are not "just" under section 1919 unless there was "no justification" for Plaintiffs' action, or if it was "implausible or frivolous." Mot. at 3-4. If that were the standard, Congress certainly knew how to say so. *See*, *e.g.*, 49 U.S.C. § 60121(b) ("The court may award costs to a prevailing defendant when the action is unreasonable, frivolous, or meritless."); *see also Marx*, 568 U.S. at 384 (citing various statutes). Nor would that standard make sense in light of *Martin*, which rejected such a standard for attorneys' fees awarded under section 1447(c)'s "just costs" provision. 546 U.S. at 138-39. If such a standard is untenable for attorneys' fees, it necessarily follows that it is untenable for costs. *See Marx*, 568 U.S. at 381-82. Further, even Plaintiffs' own authorities reject such a high bar. In *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 179 F.R.D. 328, 334 (N.D. Ala. 1998), the district court awarded costs to a defendant even though the Eleventh Circuit opinion "virtually begged plaintiff to petition for certiorari to the Supreme Court of the United States." Similarly in *Otay*, 672 F.3d at 1158-59, the Ninth Circuit stated that "costs may be justly awarded even absent extraordinary circumstances" or a showing that the suit was

8

"objectively unreasonable." Plaintiffs' suit need not be frivolous or unreasonable at its inception for defendants to recover costs.

In various pre-*Marx* cases cited by Plaintiffs, courts weigh the equities in determining whether costs were "just" under section 1919. *See*, *e.g.*, *Ericsson*, 179 F.R.D. at 331 ("Thus, the sole question before the court in this case can be restated simply as 'What is fair here?'"); *Otay*, 672 F.3d at 1157 (asking "what is most fair and equitable" on a "case-by-case" basis). Applied here, costs are "fair" for at least three reasons. First, anticipating this very result, the Assembly repeatedly asked for costly litigation to be delayed until there was a decision in *Rucho. See supra,* p. 2. But, as discussed in the Assembly's contemporaneously filed motion for attorneys' fees, Plaintiffs forged ahead with cumulative discovery and asked for an accelerated trial date. The Assembly, having predicted this very result, should not be left to pay for costs resulting from Plaintiffs' insistence that the case proceed. *See Callicrate*, 139 F.3d at 1341 (stating "it was on incumbent on defendants to fully prepare their case on the merits, even if dismissal on jurisdictional grounds seemed likely"). Second, discussed below, the Assembly participated equally in the defense. Third, the Assembly is a government entity seeking the recovery of costs not for itself but for the Wisconsin taxpayers. Having prevailed, it would be exceedingly unjust to deny those costs due to the taxpayers.

Plaintiffs' only rejoinder is that the Supreme Court is to blame. Plaintiffs contend that their claims were on solid ground in light of *Davis v. Bandemer*, 478 U.S. 109 (1986), which "was not overruled until a week ago." Mot. at 4. And

9

Plaintiffs blame *Gill* for "inviting the litigation that has occurred over the past year" by "directing plaintiffs to pursue a costly district-by-district case…." *Id.* at 4-5. Contrary to Plaintiffs' revisionist history, the Court abandoned *Bandemer* 15 years ago. *See Vieth v. Jubelirer*, 541 U.S. 267, 306 (2004) (plurality op.); *id.* at 308 (Kennedy, J., concurring in judgment). And in *Gill*, the Court described the justiciability of partisan gerrymandering claims as "unsettled" and "unresolved." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). In the face of such uncertainty, Plaintiffs' counsel nevertheless strategically chose to add 28 more Plaintiffs in the hopes of achieving a statewide remedy. Plaintiffs' all-reserves-forward strategy, despite the Supreme Court's decades-long doubt about partisan gerrymandering claims, is no reason to deny costs to the Assembly. Quite the contrary, it is reason to award them. *See, e.g., In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1150 (10th Cir. 2009) (stating "costs were, quite plainly, driven upward by the cold, hard facts of this case," that "Plaintiffs' litigation choices" and "aggressive course of discovery" "necessarily resulted in heightened defense costs," and "that consideration of such factors does not constitute disapproval or condemnation of Plaintiffs' conduct; rather, these considerations go directly towards the reasonable necessity of Defendants' costs").

Even if (contrary to binding precedent) section 1919 displaces Rule 54(d)(1)'s presumption that prevailing parties are entitled costs, an award of the same costs is appropriate under section 1919. *See Mashak*, 303 F.2d at 526-27.

10

### III. The Assembly Is A "Prevailing Party."

Plaintiffs' alternative argument—that the Assembly is not a prevailing party under Rule 54(d)(1)—contradicts the Seventh Circuit's decision in *Citizens for a Better Environment*, 230 F.3d at 930, holding that "when a dismissal for want of jurisdiction forecloses the plaintiff's claim, the defendant is the 'prevailing party'" for purposes of another fee-shifting provision. Rule 54(d)(1)'s "prevailing party" language compels the same interpretation. *See CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) ("Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner."). Here, as in *Citizens for a Better Environment*, the dismissal on jurisdictional grounds is "the most sweeping victory" for which the Assembly "could have hoped." *Citizens for a Better Env't*, 230 F.3d at 929. *Rucho* bars all future attacks on federal constitutional grounds. This dismissal "was a triumph in the war, not just in a battle or even a campaign." *Id.* at 930.

Nor is the Assembly's status as a defendant-intervenor a reason to deny costs. When the Assembly intervened, this Court saw "no reason to treat the Assembly as less than a full party." Op. & Order at 4, ECF 223. And Plaintiffs cannot seriously contend that the Assembly did nothing more than "duplicat[e] the efforts of the Wisconsin Election Commission." Mot. at 5. Counsel for the Assembly handled 29 Plaintiffs' depositions, while counsel for the Wisconsin Elections Commission Defendants handled the remaining 10. Counsel for the Assembly also fielded Plaintiffs' other discovery demands, including answering Plaintiffs' subpoenas for depositions and documents from the Assembly's Rule 30(b)(6)

11

representative, Assembly Speaker Robin Vos, and legislative aides Adam Foltz and Tad Ottman. *See* Assembly's Mot. for Fees at 6-7, 10-11, ECF 326. (Plaintiffs noticed none of the Elections Commission Defendants, by contrast, for depositions.) Among other things, the Assembly submitted Defendants' updated exhibit list for trial, drafted Defendants' joint motion to strike Plaintiffs' supplemental disclosure of four new witnesses, and drafted the joint opposition to Plaintiffs' motion to use deposition testimony in lieu of live trial testimony. *See id.* Even Plaintiffs have treated the Assembly and the Elections Commission Defendants separately—for example, on the eve of *Rucho*, serving 316 requests for admissions and related interrogatories for both parties to answer separately. *See* Exs. B-C.

An intervenor-defendant who fully participates in litigation and contributes to the result is no less a prevailing party than a defendant. *See* 10 Charles A. Wright, et al., Fed. Prac. & Proc. § 2667 (4th ed. 2019) ("[A]n intervenor is entitled to the same cost considerations as the original parties"); *see also King v. Ill. State Bd. of Elections*, 410 F.3d 404, 415 (7th Cir. 2005). Applied here, the Assembly shouldered the expense of litigation with the Elections Commission and is entitled to costs for its share of the burden. *See e.g.*, *MDT Corp. v. N.Y. Stock Exch., Inc.*, 858 F. Supp. 1028, 1035 (C.D. Cal. 1994) (awarding costs to intervenors who "substantially contributed to the resolution of this action"); *Smith v. Bd. of School Comm'rs of Mobile Cty.*, 119 F.R.D. 440, 443 (S.D. Ala. 1988) (awarding costs to defendant-intervenors); *Stewart v. City of St. Louis*, No. 4:04-cv-885, 2007 WL 2994444, at *2 (E.D. Mo. Oct. 10, 2007) (same).

As a prevailing party, the Assembly is entitled to the following costs as a matter of course. *See Marx*, 568 U.S. at 377; *Popeil Bros., Inc. v. Schick Elec., Inc.*, 516 F.2d 772, 775-76 (7th Cir. 1975); *see also Klein v. Grynberg*, 44 F.3d 1497, 1507 (10th Cir. 1995) (denying costs is a "severe penalty" and "there must be some apparent reason to penalize the prevailing party if costs are to be denied").[2]

## BILL OF COSTS

Summarized below and reflected in the attached exhibits, the Assembly submits the following bill of costs for $45,043.40. Each of these costs were reasonable and were necessary for the Assembly to litigate this case. To the extent Plaintiffs object to these costs, it is their burden to demonstrate why such costs should not be awarded. *See Popeil Bros.*, 516 F. 2d at 775; *Rivera v. City of Chicago*, 469 F.3d 631, 636 (7th Cir. 2006).

**1. Fees of the clerk and marshal:**

The Assembly submits $300 in fees paid to the clerk of the Western District of Wisconsin for the admission of the Assembly's attorneys, capped at the cost of *pro hac vice* fees. Ex. D (receipts for fees); *see* 28 U.S.C. § 1920(1); *United States v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 730 (7th Cir. 2006) (affirming award including *pro hac vice* fees).

---

[2] Plaintiffs cite *Mother & Father* for the proposition that defendants are not prevailing parties under Rule 54(d)(1). Nothing in that case unsettles the prevailing Seventh Circuit rule that "where there is a dismissal of an action, even where such dismissal is voluntary and without prejudice, the defendant is the prevailing party." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985) (quotation marks omitted).

The Assembly also submits $195 in costs for service of process for three witnesses (Brittany Keyes, Peter Barca, and Amy Sue Vruwink). Ex. E (invoices for service of process); *see* 28 U.S.C. § 1920(1).[3] Having lost its motion to strike these witnesses, Op. & Order, ECF 306, it was essential for the Assembly to depose and seek documents from these witnesses before Plaintiffs called them live at trial. *See* Pls.' Rule 26(a)(3) Disclosures, ECF 301.

**2. Fees for printed or electronically recorded transcripts of depositions necessarily obtained for use in the case:**

Pursuant to 28 U.S.C. § 1920(2), the Assembly submits $41,602.90 in total costs for the 39 depositions of Plaintiffs,[4] experts witnesses' depositions, two legislative aides deposed by Plaintiffs (whom Plaintiffs listed as trial witnesses), and Plaintiffs' deposition of the Assembly's 30(b)(6) representative. Ex. F (deposition invoices). These requested costs exclude costs for expedited rough transcripts, Realtime for use at the deposition, shipping and handling, and reporters' mileage and "appearance fees."

The cost of taking each of these depositions (or the cost of copies for depositions taken by other parties) were necessary for the Assembly to litigate this

---

[3] The Assembly's actual cost for service was $195 per witness, which the Assembly has capped at $65 per witness, equaling the hourly rate that the Marshal's Service would have charged for these tasks. *See* 28 C.F.R. § 0.114(a)(3); *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996).

[4] Costs for Plaintiffs' and Plaintiffs' expert witnesses' depositions taken by the Assembly's counsel include costs of both video-recording and stenographic transcript, as permitted in the Seventh Circuit. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008); *Frazier v. Layne Christensen Co.*, No. 04-C-0315-C, 2007 WL 1453133, at *2 (W.D. Wis. Feb. 22, 2007).

14

case. *See Mother & Father*, 338 F.3d at 712 ("introduction of a deposition at trial is not a prerequisite to taxability in a federal court" and "determination of necessity under 28 U.S.C. § 1920…must be made in light of the facts known at the time of the deposition, without regard to intervening developments that render the deposition unneeded for further use"); *Mashak*, 303 F.2d at 527. As even Plaintiffs concede, depositions of every Plaintiff were necessarily obtained in light of *Gill*'s holding that each Plaintiff must prove that they suffered a judicially cognizable, district-specific harm. *See Gill*, 138 S. Ct. at 1934; Mot. at 4-5. The remaining expert and fact witness depositions were necessary to prepare for trial, and most would have also been necessary for impeachment during cross-examination at trial. *See, e.g.*, *Callicrate*, 139 F.3d at 1341; *Colosi v. Jones Lang LaSalle Am., Inc.*, 781 F.3d 293, 296 (6th Cir. 2015). Except for the Assembly's 30(b)(6) representative, the parties listed every deponent as a trial witness. *See* Pls.' Rule 26(a)(3) Disclosures, ECF 301; Assembly's Rule 26(a)(3) Disclosures, ECF 299; *see also* Pls. Mot. to Admit Dep. Test., ECF 302.

**3. Fees for other transcripts necessarily obtained for use in the case:**

Pursuant to 28 U.S.C. § 1920(2), the Assembly submits $142.40 for transcriptions of the October 2018 preliminary conference and the February 2019 scheduling conference. *See* Ex. G. Among other reasons, these transcripts were necessarily obtained for briefing related to the Assembly's motion to dismiss and Plaintiffs' motion to substitute deposition testimony for live testimony. *See, e.g.*,

Pls'. Opp'n to Assembly's Mot. to Dismiss at 4, ECF 229; Defs.' Opp'n to Pls.' Mot. to Admit Dep. Test. at 3-5, ECF 311.

### 4. Costs of making copies of any materials where the copies are necessarily obtained for use in the case:

The Assembly submits $1,380 in costs for copying two legislative aides' electronically stored documents. *See* Ex. H. Copies were necessarily obtained for use in this case after Plaintiffs subpoenaed these witnesses for documents in advance of their depositions. *See* Foltz Subpoena, ECF 272-1; Ottman Subpoena, ECF 272-2.

An award of such costs (paid for by the Assembly) is appropriate here. Courts in this district and elsewhere have awarded "costs of copying metadata and hard drives" and "native file and email conversion" for discovery pursuant to 28 U.S.C. § 1920(4). *Split Pivot, Inc. v. Trek Bicycle Corp.*, 154 F. Supp. 3d 769, 780-81 (W.D. Wis. 2015); *see also Colosi v. Jones Lang LaSalle Ams., Inc.*, 781 F.3d 293, 297 (6th Cir. 2015) ("Imaging a hard drive falls squarely within the definition of 'copy,' which tellingly lists 'image' as a synonym."); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (ruling "costs were for converting computer data into a readable format in response to plaintiffs' discovery requests" were recoverable).

### 5. Witness fees and costs:

Pursuant to 28 U.S.C. § 1920(3) and § 1821, the Assembly submits $1,283.96 in costs for the Assembly's experts' depositions occurring in Chicago on April 18 and May 1, 2019. Ex. K (expert witness travel and lodging costs). At Plaintiffs' request, the Assembly's experts traveled from the Washington area and Urbana-Champaign for their depositions. Ex. I (3/15/2019 Email from A. Harless to J. Ackerman); Ex. J

16

(12/20/2018 Email from J. Ackerman to R. Greenwood). Of these costs, $80 are for witness fees. *See* 28 U.S.C. § 1821(a)(1). An additional $765.96 is for Dr. James Gimpel's flight, capped at the coach rate for a refundable flight on the date of travel. *See* Ex. K at 2; 28 U.S.C. § 1821(c)(4). Booking a refundable fare was reasonable given the difficulty scheduling expert depositions; Plaintiffs initially scheduled Dr. Gimpel's deposition for Madison but then moved it to Chicago after deciding they could not accommodate his originally scheduled flight. See Ex. I (3/13/19 Email from A. Harless to J. Ackerman); Ex. L (record of Madison flight). The remaining $438 is for lodging for both witnesses, capped at the $219/night lodging allowance established by the Administrator of General Services. *See* 28 U.S.C. § 1821(d).

Also pursuant to 28 U.S.C. § 1920(3) and § 1821, the Assembly submits $139.14 for advanced witness fees and mileage costs paid as part of the Assembly's cost to subpoena witnesses Keyes, Barca, and Vruwink. Ex. E; *supra*, p. 14. These fees have not been reimbursed. *See* Meehan Decl. ¶8; *cf. Mashak*, 303 F.2d at 527.

## CONCLUSION

For the foregoing reasons, the Assembly respectfully requests an award of costs of $45,043.40 pursuant to Rule 54(d)(1) and 28 U.S.C. §§ 1919, 1920.

July 15, 2019                    Respectfully submitted,

*/s/ Adam K. Mortara*
Adam K. Mortara, SBN 1038391
Joshua P. Ackerman
Taylor A.R. Meehan
BARTLIT BECK LLP
54 W. Hubbard Street
Chicago, IL 60654
Ph. 312-494-4400
Fax 312-494-4440
adam.mortara@bartlitbeck.com
joshua.ackerman@bartlitbeck.com
taylor.meehan@bartlitbeck.com

*/s/ Kevin St. John*
Kevin St. John, SBN 1054815
BELL GIFTOS ST. JOHN LLC
5325 Wall Street, Suite 2200
Madison, WI 53718-7980
Ph. 608-216-7990
Fax 608-216-7999
kstjohn@bellgiftos.com

*Attorneys for Wisconsin State Assembly*